## MISSOURI PACIFIC RAILWAY COMPANY v. CONTINENTAL NATIONAL BANK and NATIONAL BANK OF COMMERCE, Appellants.

### Division One, May 30, 1908.

1. **PLEADING: Amendment: Departure: No Exceptions: Review.** Where no exception was saved to the filing of an amended petition filed after the evidence was in, and no motion was made to strike out on the ground of departure, the original petition, which was not introduced in evidence and was not preserved in the bill of exceptions, became *functus officio*, and though printed and brought to the Supreme Court by the appealing defendants, it will not be considered in aid of defendants' point that plaintiff by its amended petition abandoned its original theory.

2. ———: **Bank Deposit.** A petition that avers a bank doing a general banking business and a fund coming into its possession belonging to a corporation in effect standing in the relation of depositor, that is, a fund payable to the corporation's order and credited to it on the bank books, pleads all the constitutive elements of a bank deposit.

3. ———: ———: **Upon Condition.** The mere fact that payment by the bank to the corporation was at the outset subject to a condition, if there came a time when the condition precedent to payment was performed and was out of the way, should not be held conclusive that the relation of banker and depositor did not exist. Especially should that be the holding if, after the condition was performed, the bank recognized that it held the fund subject to check and honored checks drawn against it by its owner as a depositor in the due course of banking.

Railroad v. Bank.

4. ——: ——: **Bookkeeping.** Justice is not to be entangled and strangled by the refinements of bookkeeping—especially refinements adopted by a bank in reference to a fund without consulting the owners of the fund. The thing to be got at is the legal effect of the thing done.

5. ——: ——: **Trust Fund: Wrong Theory.** Where the evidence establishes the facts that the bank assumed the relation of banker, that plaintiff's predecessor assumed the relation of depositor, and that the fund assumed the form of a deposit payable on the order of the depositor or its succeeding owner, and the petition is broad enough to admit that proof, the judgment will be affirmed on the theory that the relation of banker and depositor existed, although appellants contend the trial court put its finding alone on the theory that the bank was a trustee and the fund a trust fund. The reason for the decision below is of no consequence if the judgment is within the pleadings and is supported by the proof.

6. **LIMITATIONS: Bank Deposit: Demand.** The Statute of Limitations does not begin to run in favor of a banker as against his depositor before demand of payment by, and a refusal to pay on, the depositor's order. The deposit is not due until demand is made; hence, the demand and a refusal to pay set the statute to running.

7. **CREDIBILITY OF WITNESSES: Questions for Trial Court.** Where it is sought to draw unfavorable inferences from the destruction and spoliation of the bank books in which the account of the depositor was kept, and from facts showing that the chief witness against the bank had a contractual pecuniary interest in the suit, it will be held that these questions go to the credibility of the witnesses or affect the weight and quality of the proof, and were for the trial court and not for the appellate court.

Appeal from St. Louis City Circuit Court—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*S. N. & S. C. Taylor* for appellants.

(1) The agreement by the bank to pay $24,406.50 when the Pacific Railroad had laid its tracks to Concordia; and to pay $24,406.50 when the tracks were laid to Lexington, was not in writing, and, therefore, was affected by the five-year Statute of Limita-

tions. R. S. 1899, sec. 4273; State ex rel. v. Grigsby, 92 Mo. 419; Landis v. Saxton, 105 Mo. 486; Shelby County v. Bragg, 135 Mo. 295; Menefee v. Arnold, 51 Mo. 536; Reyburn v. Casey, 29 Mo. 129; Moorman v. Sharp, 35 Mo. 283; Curtis v. Sexton, 201 Mo. 230; Stark v. Zehnder, 204 Mo. 443. If, however, this court should hold that the written entry in the ledger of the bank constituted a contract in writing, then the ten-year Statute of Limitations would apply and bar recovery. (2) When an obligation to pay is complete, the cause of action has matured, and formal demand is unnecessary as a condition precedent to bringing suit, and the statute then begins to run. Clarke v. Sinks, 144 Mo. 453; Landis v. Saxton, 105 Mo. 490; State ex rel. v. Grigsby, 92 Mo. 419; State ex rel. v. Shires, 39 Mo. App. 567; Easton v. McAllister, 1 Mo. 662. (3) The election of one to perfect a demand must be exercised within a reasonable time. It cannot be extended beyond the period of the Statute of Limitations. Landis v. Saxton, 105 Mo. 490; Jameson v. Jameson, 72 Mo. 642; O'Fallon v. Kerr, 10 Mo. 554; Easton v. McAllister, 1 Mo. 662; Kraft v. Thomas, 123 Ind. 513; Railroad v. Township, 36 Kan. 628; Palmer v. Palmer, 36 Mich. 488. (4) If, for argument, we assume that a demand was necessary, before an action could have been maintained for the $5,406.50, still that would not stay the running of the statute, because where a demand is a condition precedent to a right to sue, such demand must be made within the period of limitation, else the action is barred. Landis v. Saxton, 105 Mo. 491; Easton v. McAllister, 1 Mo. 662; Kraft v. Thomas, 123 Ind. 513; Newsom v. Board of Education, 103 Ind. 526; High v. Board, 92 Ind. 580; Codman v. Rogers, 10 Pick. 112; Morrison v. Mullin, 34 Pa. St. 12; Railroad v. Burlingame, 36 Kan. 628; Palmer v. Palmer, 36 Mich. 488; Ball v. Railroad, 62 Iowa 753; Sanford v. Lancaster, 81 Me. 434; Wood on Limitations (3 Ed.),

sec. 125. (5) The statute begins to run against "a promissory note payable on demand" the day of its date, and the action will be barred in ten years after its date. Jameson v. Jameson, 72 Mo. 642; O'Fallon v. Kerr, 10 Mo. 554; Easton v. McAllister, 1 Mo. 662; Palmer v. Palmer, 36 Mich. 487; Hall v. Litts, 21 Iowa 596; Ware v. Hewey, 57 Me. 391; Kraft v. Thomas, 123 Ind. 513. Turner v. Mining Co., 74 Wis. 358, holds: "The law is well settled that a promissory note payable on demand, whether with or without interest, is due forthwith, and an action thereon against the maker is barred by the Statute of Limitations if not brought within the time prescribed by statute after its date." Wheeler v. Warner, 47 N. Y. 519; Howland v. Edmonds, 24 N. Y. 307; Burnham v. Allen, 1 Gray 496; Sylvester v. Crapo, 14 Pick. 92; Taylor's Adm'rs v. Whitman's Adm'rs., 3 Grant's Cas. 138; Larason v. Lambert, 12 N. J. Law, 247; Curran v. Witter, 68 Wis. 16; Schriber v. Richmond, 73 Wis. 12; Mitchell v. Easton, 37 Minn. 335; Hill v. Henry, 17 Ohio 9; Caldwell v. Rodman, 5 Jones, L. 139; Wilks v. Robinson, 3 Rich. Law 182. (6) An action for money had and received is barred by the five years' limitation, and plaintiff's ignorance of his cause of action will not affect the running of the statute in the absence of concealment, etc. Shortridge v. Harding, 34 Mo. App. 354; Garrett v. Conklin, 52 Mo. App. 654; Bueckner v. Patterson, 16 Ky. 234; Webster v. Bible Soc., 50 Ohio St. 1; Douglas v. Corry, 46 Ohio St. 349. Where a debt is payable on demand, the statute begins to run immediately after the debt is incurred, for the courts generally hold that a debt payable on demand is due immediately, so that an action can be brought at any time without any other demand than the suit, and the statute begins to run at once. Collins v. Trotter, 81 Mo. 275; O'Neil v. Magner, 81 Cal. 631; Seward v. Hayden, 150 Mass. 158; Citizens' Savings Bank v. Vaughan, 115 Mich. 156; 7

Ency. Law & Pro., 848; Wood, Limitations of Actions (3 Ed.), sec. 124; 2 Dan. Nego. Instr. (5 Ed.), 1698; Fenno v. Gay, 146 Mass. 118; Hitching v. Edmonds, 132 Mass. 338; Cousins v. Partridge, 79 Cal. 224; Henry v. Roe, 83 Tex. 446; Swift v. Trotti, 52 Tex. 498; Bartholomew v. Seaman, 25 Hun 619; Erwin v. Brooks, 111 N. C. 358. (7) The statute does not run against technical, continuing express trusts, such as fall within the peculiar and exclusive jurisdiction of courts of equity. Every trust which admits of an action at law for its enforcement is subject to the statute. Keeton's Heirs v. Keeton's Admr., 20 Mo. 538; Johnson v. Smith's Admr., 27 Mo. 592; Hunter v. Hunter, 50 Mo. 450; Ricord's Adm'x v. Watkins, 56 Mo. 554; Landis v. Saxton, 105 Mo. 489; Shelby County v. Bragg, 135 Mo. 296; Dexter v. McDonald, 196 Mo. 389; Garrett v. Conklin, 52 Mo. App. 659; Zacharias v. Zacharias, 23 Pa. St. 452; Hostetter v. Hallinger, 117 Pa. St. 606; Railroad v. Bridges, 46 Am. Dec. 528; Hayward v. Gunn, 82 Ill. 385; Governor, Etc. v. Woodworth, 63 Ill. 254; People v. Ocheltree, 48 Ill. App. 220; Jewells v. Jewells' Est., 139 Mich. 586; Harlow v. Dehon, 111 Mass. 195; Farnam v. Brookes, 9 Pick. 243; Parks v. Satterthwaite, Admr., 132 Ind. 411; Butler v. DeBaum, 116 Wis. 326; Kennedy v. Baker, 59 Tex. 150; Wingate v. Wingate, 11 Tex. 434; Tinner v. Mebane, 10 Tex. 252; Hightower v. Hester, 4 Tex. Civ. App. 57; Mills v. Mills, 115 N. Y. 80; Dunn v. Dunn, 137 N. C. 533. (8) Statutes of limitation are favored in the law, and cannot be avoided, unless the party seeking to do so brings himself strictly within some exception. Shelby Co. v. Bragg, 135 Mo. 300; Rogers v. Brown, 61 Mo. 187; State ex rel. v. Willi, 46 Mo. 236; Garrett v. Conklin, 52 Mo. App. 654; Shortridge v. Harding, 34 Mo. App. 354; Wood v. Carpenter, 101 U. S. 141; Buckner v. Calcote, 28 Miss. 432; Nudd v. Hamblin, 8 Allen 130. (9) The error of the

trial court consisted in holding that the transaction
constituted a direct express trust, and, therefore, could
not be affected by the Statute of Limitations. Call it,
if you will, a direct express trust—the name is not sig-
nificant—the undisputed facts must control, and such
facts undeniably show that the transaction does not
possess the characteristics of the "technical, continu-
ing express trusts, such as fall within the peculiar and
exclusive jurisdiction of courts of equity." The au-
thorities we have cited at point 7 demonstrate the error
of the trial court's conclusion.

*H. G. Herbcl* and *Brownrigg, O'Brien & Mason*
for respondent.

(1)  There has been no change of theory on the
part of plaintiff in this case, but if there had been, in-
asmuch as the original petition in the case was not pre-
served in the record by exception, appellants would not
be entitled in this court to complain of any alleged
change of theory on the part of the plaintiff in the trial
court.  (2)  Against a bank deposit or an account or
credit with a bank payable at the bank on demand and
subject to draft or check, the Statute of Limitations
does not run until after a demand by the customer of
the bank for payment and the refusal thereof by the
bank.  Koelzer v. First Nat'l Bank of Whitewater
(Wis.), 104 N. W. 838; 3 Am. and Eng. Ency. Law (2
Ed.), 838; Branch v. Dawson, 33 Minn. 400; Goodell v.
Brandon Nat'l Bank, 63 Vt. 305; Girard Bank v. Bank
of Penn Township, 39 Pa. St. 98; Bolles on Banks and
Their Depositors, sec. 360; Morse on Banks and Bank-
ing (4 Ed.), secs. 186, 322; Landis v. Saxton, 105 Mo.
491; Newark on Bank Depositors, sec. 11.  (3)  Where
money is held by one party in trust for another, and
the trust arises, not by implication of law or as a re-
sult of mistake or fraud, but by virtue of an express
agreement that the money is to be held and used by the

trustee for a certain purpose for the benefit of the *cestui que trust,* the Statute of Limitations does not begin to run in favor of the trustee until there has been a repudiation of the trust clearly and unequivocally brought home to the knowledge of the *cestui que trust.* Zeidman v. Molasky, 118 Mo. App. 119; Prewitt v. Prewitt, 188 Mo. 675; Frank v. Morley, 106 Mich. 635; Walden v. Karr, 88 Ill. 49; Davis v. Davis, 86 Hun 400; Post v. Benchley, 48 Hun 83; Purdy v. Sistare, 2 Hun 126; Heil v. Heil, 184 Mo. 665; Hillman v. Allen, 145 Mo. 638; Foster v. Friede, 37 Mo. 36; Goodwin v. Goodwin, 69 Mo. 617; Ruby v. Barnett, 12 Mo. 3; Dillon's Admr. v. Bates, 39 Mo. 292; Fox v. Cash, 11 Pa. St. 207; Marshall's Estate, 138 Pa. St. 285; Pepper v. Robinson (Pa.), 32 W. N. C. 203; Jones' Executor v. Henderson, 149 Ind. 458; Stanley's Estate v. Pence, 160 Ind. 636; Jones v. Home Savings Bank, 118 Mich. 155; Seymour v. Freer, 8 Wall. (75 U. S.) 202; Perry on Trusts, sec. 283.

LAMM, J.—In 1897 plaintiff brought suit against the Continental National Bank to recover $5,406.50, with interest from the date of demand and refusal to pay, to-wit, July 2, 1894. Subsequently, said bank was absorbed by its co-defendant, the National Bank of Commerce, and the latter was made a party.

At the trial after the evidence was in, an amended petition was filed to conform to the legal effect of the facts proved. The answer was a general denial and a plea that the cause of action "did not accrue within five, nor within ten years, before the commencement of this action."

Plaintiff recovered $9,091 below, and defendants appeal.

The amended petition was broad enough to make competent the testimony put in on both sides. It substantially appears therefrom that in June, 1871, the

National Loan Bank was a banking corporation doing a general banking business in the city of St. Louis. That in that year it bought certain bonds issued by certain counties in aid of a railroad from Sedalia to Lexington, then building as a branch of the Pacific Railroad, the particulars of which will more fully appear when the evidence is reached. That said bank by an agreement between the parties in interest (the vendors, the bank and the Pacific Railroad) agreed to hold and did hold $48,813 of the proceeds for the benefit of the Pacific Railroad, payable to its order when certain conditions as to track laying were complied with, and thereupon entered a credit upon its books in said sum in favor of said Pacific Railroad, reciting the conditions precedent to payment. That thereafter, on part compliance, it paid to the Pacific Railroad one-half said sum and held the remainder. That thereafter, on full compliance with the conditions, it paid $19,000 of said remainder to the Pacific Railroad on its order, and thereafter it and its successors have held the balance of $5,406.50, subject to the order of its owner. That in 1873 said bank changed its name to the Continental Bank, the latter taking over the funds and business of the former, burdened with all its liabilities. That in 1889 defendant, the Continental National Bank, was organized under the National Banking Act, becoming the successor to the Continental Bank as owner of its assets, burdened with all its liabilities, and thereafter continued said general banking business until 1902. That in 1902 defendant, the National Bank of Commerce, then doing a general banking business, absorbed the Continental National Bank, coming into possession of all its assets burdened with all its liabilities. That in 1849 there was organized a domestic railroad corporation, known as the Pacific Railroad (spoken of in commercial circles colloquially for business ends, while a going concern, as the "Mis-

souri Pacific,'' possibly ·to distinguish it from other
Pacific Railroads), said Pacific Railroad, as a matter
of history, owning and operating a road from St. Louis
to Kansas City through Sedalia.   Afterwards in 1876
and at subsequent dates, because of sundry acts of in-
corporation,    consolidation,    reorganization,    leasing,
foreclosure and succession, the plaintiff corporation,
springing into existence in 1880, became owner of all
the properties, assets and franchises of said railroad
corporations, including the fund in dispute.   We pur-
posely omit details going to the chains of title afore-
said (as pleaded in   sundry   incidents   of   corporate
swallowing and digestion) because the case is submit-
ted to us on the theory that not only the deposit or
fund in dispute, but that said several successorships,
etc., existed and that the only substantial defense is
*limitation,* not *title.*

Attending to the facts, it will serve no good pur-
pose to set forth the testimony in detail.   Its outline is
as follows:

(a)    There is no discord in the testimony on the
following facts: That in 1871 the counties of Pettis and
Lafayette issued bonds in aid of the building of what
was then commonly known as the Lexington Branch of
the Pacific Railroad, running from Sedalia to Lexing-
ton.    That in June, 1871, said National Loan Bank
purchased those bonds.    That, of the proceeds, $48,813
were held as a fund by said bank under the following
tripartite agreement, set forth in its books between it,
the Pacific Railroad and the vendors of said bonds,
viz.:   in effect that one-half of said sum should be paid
by said bank to the Pacific Railroad when the track of
said Lexington Branch was completed from Sedalia to
the town of Concordia, and the other half when it was
completely laid from Sedalia to Lexington—Concordia
being about equi-distant between Lexington and Se-

212 Sup—33

dalia. It appears that said fund or deposit was entered on the bank's books as a credit in favor of the Pacific Railroad, payable in accordance with the said deposit agreement. It appears that in December, 1871, the track was laid from Sedalia to Concordia, whereupon the bank ascertained and recognized its liability to pay in part and did pay one-half of said fund, to-wit, $24,406.50, to the Pacific Railroad on its demand in conformity with the agreement, and that an entry on its books was made taking credit in favor of the bank for that payment. That in January, 1872, said track was completely laid from Sedalia to Lexington, whereupon the liability to pay ripened *in toto,* and the bank paid in the following March, $19,000 of said fund to the said Pacific Railroad on its demand and an entry was made taking credit to the bank for that amount, leaving as a balance the principal sum sued for. It stands admitted that on the 2nd day of July, 1894, plaintiff drew its check or draft on the Continental National Bank for said balance, which said bank refused to honor and from that day to this has uniformly denied liability. There is no dispute as to the amount due, if aught be due—that is, defendants do not claim that they or their predecessor, the Continental Bank, nor the predecessor of that bank, the National Loan Bank, ever paid that balance or any part of it or that the interest accruing after demand and refusal to pay is computed incorrectly. To the contrary, the uncontradicted testimony tends to show that by some twist in bookkeeping the Continental Bank absorbed that balance into an account pertaining to its bond transactions and thereby diverted and appropriated it to its own use. No consent, express or implied, is shown for this appropriation, nor is there any attempt to show that notice of it was ever brought home to the owner of the fund before the demand and refusal to pay in 1894. Neither is there any dispute over the fact that

the transactions in question appeared on the books of the National Loan Bank and the Continental Bank. In fact defendants rely on the contents of those books (as shown by secondary evidence) and plaintiff relies on their contents (as shown by secondary evidence). It stands admitted the books in question came in due course into the keeping of defendant, the Continental National Bank, and were in its vaults after suit began. That plaintiff through counsel requested their careful preservation as evidence, but that the books thereafter were by inadvertence in part mutilated and in part destroyed.

(b) The record does not disclose whether the first payment of $24,406.50 was made by check drawn by the Pacific Railroad or by other form of demand and receipt given, or how the money passed out of the bank's coffers. The testimony is not in accord on the showing made by the books as to how the $19,000 were paid. Plaintiff introduced secondary evidence tending to show that the books disclosed a payment *by check as if on an account subject to check*; it put in other evidence from the former cashier and the former bookkeeper of the National Loan Bank and the Continental Bank tending to show that under the method of bookkeeping in vogue in those banks the fund stood in an account kept in such a way as to be subject to check in due course of banking when once the track was laid from Sedalia to Lexington. Much of the testimony related to the technique of bank bookkeeping, but since the method adopted by these banks appears to have been selected as a convenience to themselves without consultation with the beneficial owner of the fund, the details of this testimony would seem immaterial—the ultimate question to be got at being its legal effect. Defendant introduced testimony tending to show that the account, deposit or fund, however designated, at no time was in a form subject to check and was never

treated as a live, current account. It introduced testimony tending to show that the books did not disclose that any check had been drawn at any time against the account. The clear weight of the testimony indicates that the account or fund appears to have been kept under the title of "Bills Payable," and was carried on from day to day and from book to book as a balance earmarked as due the "Pacific Railroad" or "Missouri Pacific Railroad" until at a certain time it disappeared in that form, reappearing as absorbed in the bond account and not as a daily balance due. There was testimony tending to show there was a divergence of opinion between the officers of those banks as to the method of bookkeeping adopted with relation to the fund in dispute. As we gather it, when the fact was recognized by the bank that the railroad was completed to Lexington and that the agreement under which the money was held was ready for full execution, the cashier was of opinion it should be transferred to a current account of the proper railroad company under an appropriate head but the president of the bank required it to be kept and carried as formerly. It is suggested by counsel that the Pacific Railroad about the time in hand passed into the hands of the Atlantic & Pacific and that in the transfer of properties between the railroad companies, with the corporate deaths and changes of officers disclosed, the fund was lost to railroad sight and memory for some time.

On this record, counsel for plaintiff contend the judgment should be affirmed on either of two allowable theories, first, that plaintiff bore the relation of depositor in the Continental National Bank and subsequently in the Bank of Commerce, that if such relation is held to exist then the Statute of Limitations did not begin to run until demand was made by check or draft and payment was refused, that in this case demand was made in 1894 and suit was instituted in 1897.

therefore, the statute is not a defense; second, they argue, that under the amended petition and the facts in proof there is another allowable theory, on which the judgment should be affirmed, viz., that the fund in question by virtue of the express agreement in evidence was held as a trust fund by the trustee for a certain purpose for the benefit of the *cestui que trust* and therefore the Statute of Limitations did not run until there was an explicit and palpable repudiation of the trust, unequivocally brought home to the *cestui que trust,* and such repudiation, they say, did not arise until demand of payment and refusal as aforesaid.

On the other hand, the appellants' counsel contend that the trust created, if any, was merely an implied trust and hence under the facts of the record the Statute of Limitations is a bar; and, second, they argue, in substance, that there was no relation of depositor and banker, but that the bank was a mere debtor who owed a debt in the nature of a bill payable, and therefore any exception in favor of a bank depositor in applying the law of limitations does not apply in this case. They argue, too, that plaintiff by its amended petition abandoned the theory of depositor and depositary—that limitation is a full defense.

I. The record discloses no exception saved to the filing of the amended petition and no motion to strike out on the ground of departure. Neither was the original petition introduced in evidence and preserved in the bill of exceptions. In this condition of things, it became *functus officio,* and though printed and brought here by defendants and though we are pressingly invited to look at it in aid of defendants' point of abandonment of the theory of banker and depositor, yet to do so would be to go outside of the record, which we may not do; hence, the amended petition must speak for itself without aid of any interpreting side-light from abandoned petitions. Looking to it and constru-

ing its averments liberally, as we are bound to do (R. S. 1899, sec. 629), we find the constitutive elements of a bank deposit are pleaded, to-wit, a bank doing a general banking business and a fund coming into its possession belonging to a corporation in effect standing in the relation of a depositor—*i. e.*, payable to the latter's order and credited to it on the bank books. We cannot hold as a matter of law that this condition did not initiate and establish the relation of banker and depositor between the two as that relation is defined in the books. The mere fact that payment at the start was subject to a condition should not be held conclusive, we think. This is so, because there came a time when it stands conceded that the condition precedent to payment had been performed and was out of the way. There came a time, also, if plaintiff's evidence controls, when the bank recognized that it held this very money subject to check and honored checks drawn against it by its owner as a depositor in due course of banking. In answer to the charge of abandonment of the theory of the existence of the relation of banker and depositor, plaintiff's counsel point to the amended petition alleging and to the proof establishing that relation and they deny it is abandoned.

Justice is not to be entangled and strangled in and by the refinements of bookkeeping—refinements, in this instance, adopted by the banks without consulting the owner of the fund. The thing to be got at is the legal effect of what was done. The thing done, according to plaintiff's evidence, was that the bank assumed the relation of banker; that plaintiff's predecessor assumed the relation of depositor; and that the fund assumed the form of a deposit payable on the order of the depositor. There being evidence that the thing done established the relation of banker and depositor, and the petition being broad enough to admit that proof, the point is ruled against defendants—this, in

spite of the contention made by counsel that the trial court put its finding on the trust theory alone. If this were so, the *ratio decidendi* below is of no consequence on appeal so long as the judgment is within the pleadings and is supported by the proof. We hold there was no abandonment of the theory of the existence of the relation of banker and depositor, and that there was substantial testimony sustaining that theory.

II. We now come to consider the question of limitation from the standpoint of banker and depositor.

To avoid misinterpreting what is said on the point of limitation, it is well to announce at the outset that whatever is said must be construed as strictly confined to the particular facts held in judgment. This is not a case where a bank owes a bill payable—an I O U, a note or due bill; nor is it a case of a certificate of time deposit not subject to check; nor is it a case where a bank comes into possession of a fund as a mere collecting agent and nothing more; nor is it a case (which we cite without approving or disapproving) like Quattrochi Bros. v. Bank, 89 Mo. App. 500, where a pass book was balanced, a credit item wrongfully altered and a cause of action apparently predicated of the wrongful alteration of the pass book. The law of limitations of actions applied to such or like cases or to cases where pass books are balanced, accounts rendered and (after notice) acquiesced in, or where questions of estoppel might arise, does not concern us.

The naked question here is: Does the Statute of Limitations run in favor of a banker as against his depositor before demand of payment by, and a refusal to pay on, the depositor's order?

Neither diligence of counsel nor our own has discovered a case directly in point in the appellate courts of this State. The question, then, is *res integra* and must be decided on the inherent reason of the thing

and the persuasive authority of precedents in other jurisdictions establishing the general law.

Courts are fond of saying that the relation between depositor and banker is merely that of debtor and creditor. [Henry County v. Salmon, 201 Mo. l. c. 163.] If that formula precisely expressed all there was of the truth then the Statute of Limitations would be applied to the relation of depositor and banker precisely as it is between debtor and creditor. But the formula may be said to be somewhat of a fiction of the law—a formula used for want of a better, and springing from the poverty of our language in expressing nice shades of thought. It is the truth but not all there is of it. [Clifford Banking Co. v. Donovan Com. Co., 195 Mo. l. c. 287.] For example, a bank is sometimes viewed as a mere custodian of the depositor's fund (Girard Bank v. Bank, *infra*); so, it is trite learning that a bank is under no obligation to pay until demand made. It need not, like a common debtor, run about and hunt up its creditor and pay him whenever and wherever found. To the contrary (Mahomet going to the mountain) it pays only over its counter (see authorities, *infra*). The deposit, then, not being due till demand is made, the demand and refusal to pay set the statute running.

The root and philosophy of the relation is suggested by SHERWOOD, J., in Landis v. Saxton, 105 Mo. l. c. 491, where, speaking of deposits in banks, he says: "The very purpose of the bailment is safe keeping, and the duration of the bailment is necessarily indefinite. There, some action is requisite in order to determine the bailment, and to put the bailee in the wrong, in case he may refuse to accede to the demand for the deposit made."

When A puts his money with B, a banker, he does it with the purpose of leaving it there for a day, a year, or many years. It may be it is not put where

moth and rust do not corrupt and thieves do not break through and steal, but A feels safe, as things run in this world. He may go into a far country, up and down and to and fro, resting on the assurance that his money will be his on his return—B having the use, the interest, of it as his in the absence of a special agreement. Was it not shrewdly said in very olden time: "Wherefore then gavest not thou my money into the bank, that at my coming I might have required mine own," etc.? [Luke XIX, 23 q. v.] But would it not be a startling and far-reaching proposition to announce that B, the banker, has not only the usufruct of, but by the mere flux of time has *absorbed*, the very *corpus* of A.'s deposit—thus bringing B within the description of the austere man, of whom it was said, in the authority, *supra*: "Thou takest up that thou layedst not down and reapest that thou didst not sow."

The fact that no case involving that proposition is in our reports may well be due to the consensus of opinion in the business world that the proposition runs counter to good banking and the good sense of the thing. Referring to the contract between banker and depositor, Morse on Banks and Banking (4 Ed.), vol. 1, sec. 322, says: "We have already seen that it is a contract specially modified by the clear legal understanding that the money shall be forthcoming to meet the order of the creditor whenever that order shall be properly presented for payment. It follows, therefore, that this demand for payment is an integral and essential part of the undertaking, and, it may be said, even of the debt itself. In short, the agreement of the bank with the depositor, as distinct and valid as if written and executed under the seal of each of the parties, *is only to pay upon demand*; accordingly, until there has been such demand, and a refusal thereto, or until some act of the depositor, or some act of the bank made

known to the depositor, has dispensed with such demand and refusal, the statute ought not to begin to run, nor should any presumption of payment be allowed to arise."

Mr. Bolles, in his work on Banks and Their Depositors, sec. 360, adopts the rule announced by STRONG. J., in Girard Bank v. Bank of Penn Township, 39 Pa. St. l. c. 98, and the reasons supporting it, as stating the generally accepted doctrine, viz.: "The engagement of a bank with its depositor is not to pay absolutely and immediately, but when payment shall be required at the banking-house. It becomes a mere custodian, and is not in default or liable to respond in damages until demand has been made and payment refused. Such are the terms of the contract implied in the transaction of receiving money on deposit, terms necessary alike to the depositor and the banker. And it is only because such is the contract, that the bank is not under the obligation of a common debtor to go after its customer and return the deposit wherever he may be found. Hence, it follows that no right of action exists, and the Statute of Limitations does not begin to run until the demand stipulated for in the contract has been duly made. For this, authorities are hardly necessary."

The great weight of authority runs the same way. [Munnerlyn v. Bank, 88 Ga. 333; Koelzer v. Bank of Whitewater (Wis.), 104 N. W. 838; and see cases collected from Arizona, Louisiana, Maryland, Massachusetts, Minnesota, Nebraska, New York, South Dakota, Texas and Vermont by the learned editor in 25 Cyc., note 32, p. 1098.]

It results that having already held that under the pleadings and proofs the relation of depositor and banker might well exist in this case, we now go further and hold that, under the facts uncovered and established, the Statute of Limitations did not run. Broad

justice and public policy lie with that view. So, the doctrine of well-reasoned cases lies the same way.

III. Subsidiary questions are discussed by counsel, viz.: (1) On plaintiff's behalf, by force of the maxim, *Omnia praesumuntur contra spoliatorem*, it is sought to draw unfavorable inferences from the destruction and spoliation of the bank books; and (2) on defendants' behalf it is argued that the facts show the chief witness for plaintiff had a contractual pecuniary interest in the result of the suit. But it must be at once apparent that both these questions either go to the credibility of the witnesses, or affect the weight and quality of the proofs and therefore were for the trial and not the appellate court. The evidence showed some lack of care in preserving the bank books on the part of the Continental National Bank. Their loss and spoliation, however, were explained in a way which, if believed, relieved its officers from any sinister motive. The office of this evidence in the first instance, at least, was to pave the way to admit secondary evidence of the contents of those books. Both parties availed themselves of that right. If a witness has a pecuniary interest in the result of a suit, a mote in his eye, that interest touches and affects his credibility alone. It raises the question whether "the jingle of the guineas" of anticipated gain drowns the still, small voice of conscience—whether he is the excellent witness of the Psalmist, "He that sweareth to his own hurt and changeth not"—and is essentially one for the trial court in weighing testimony.

IV. The conclusions already reached determine the case.

There are facts tending to show that the fund in dispute was a trust fund held under a trust created by express agreement as distinguished from an implied or resulting trust. It is insisted by plaintiff's counsel that the judgment might well be sustained on those

facts on the theory that the Statute of Limitations does not run against an express trust. This view of the facts and the law is thoroughly threshed out by counsel pro and con, but it would seem to be unnecessary to discuss or develop that question or put affirmance on that ground. Let the judgment be affirmed.

It is so ordered. All concur, except *Valliant, P. J.,* absent.