# Wilkins *v.* Cauffiel, Appellant.

*Contract—Purchase of stock—Evidence—Accord and satisfaction—Laches—Statute of limitation—Case for jury.*

In an action of assumpsit to recover money paid for shares of stock, plaintiff testified that in 1917 he was induced to purchase certain stock by the oral promise of the defendant to repay him if he became dissatisfied. Plaintiff further testified that in 1920 defendant persuaded him to exchange said stocks for stock in a coal company, renewing the promise to repay if at any time plaintiff so desired. There was evidence that plaintiff served as president of both companies, but that defendant was practically in control, and that the plaintiff was merely his agent. Plaintiff made no demand for a return of his investment until 1925.

In such a case the evidence was for the jury on the several questions as to whether the exchange was an accord and satisfaction of the original contract; whether at the time of the exchange defendant's promise to repay was renewed; and whether the exchange was the act of the plaintiff as president of the coal company.

The court properly refused to charge that plaintiff was guilty of laches in waiting beyond the statutory limitation to make his demand where there was sufficient evidence, if believed, to toll the statute.

Argued April 19, 1927. Appeal No. 26, April T., 1927, by defendant from judgment of C. P. Cambria County, September T., 1925, No. 895, in the case of John R. Wilkins v. Joseph Cauffiel. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Assumpsit for moneys paid for shares of stock. Before EVANS, P. J., McCANN, J., and REED, P. J. O. C. Specially Presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $600, with interest, and in the sum of $1,000 with interest. Subsequently, on motion, rules for judgment non obstante veredicto and for a new trial were refused. Defendant appealed.

*Errors assigned,* among others, were refusal of judgment non obstante veredicto and for a new trial.

*J. J. Kintner,* of *Stephens & Kintner,* and with him *Philip N. Shettig* for appellant, cited: Patton v. Commonwealth Trust Co., 276 Pa. 99; Young v. Gongaware, 275 Pa. 289; Hazlett v. Stillwagon, 23 Pa. Superior Ct. 114; Henry v. Zurflieh, 203 Pa. 452; Maniatakis' Estate, 258 Pa. 15; Thomas v. Sweeney, 75 Pa. Superior Ct. 324; Hosler v. Hursh, 151 Pa. 422; Fink v. Farmers' Bank et al., 178 Pa. 170; Meaker Galvanizing Co. v. McInnes & Co., 272 Pa. 566; Zentmyer v. Zentmyer, 69 Pa. Superior Ct. 499; Smith, etc. v. Holmwood, 87 Pa. Superior Ct. 100.

*Frank P. Barnhart,* for appellee, cited: Roberts v. Cauffiel, 283 Pa. 64; Davis v. Cauffiel, 287 Pa. 420; White v. Black, 14 Pa. Superior Ct. 459; Real Estate Title Etc. Company's Appeal, 125 Pa. 549; Martin v. McCune, 8 Pa. Superior Ct. 84; Rose v. Scott, 75 Pa. Superior Ct. 196; Gordon v. Tea Company, 243 Pa. 330.

OPINION BY CUNNINGHAM, J., July 8, 1927:

The litigation which resulted in this appeal arose out of the sale by the defendant, appellant herein, to the plaintiff of certain shares of stock in a copper company and the exchange thereof for stock in a coal company. The action was based upon the alleged breach by defendant of certain promises which plaintiff claimed were made to him in connection with these transactions, as inducements for the purchase and exchange of the stocks. The plaintiff obtained a verdict in the sum of $1,600, with interest on $600 thereof from April 23, and upon the balance from October 23, 1917. The court below having refused a new trial and denied defendant's motion for judgment n. o. v. this appeal was taken. With two exceptions this case is

similar to, and ruled by, the decisions of our Supreme Court in Roberts and Boyer v. Cauffiel, App., 283 Pa. 64, and Davis v. Cauffiel, App., 287 Pa. 420, in which cases judgments against the same defendant, obtained by other purchasers of stock of the copper company, were affirmed. This appeal is supported by nine assignments of error, but it is unnecessary to discuss them in detail. It is sufficient to say that (aside from the refusal of a new trial and the denial of judgment n. o. v.) all the questions sought to be raised by the assignments in this case have been decided against the appellant in the above cited cases except those raised by the first, second, third and fifth assignments.

The errors complained of in the assignments specified are: (a) the refusal of the trial judge to affirm defendant's first and second points for charge, in which defendant asked that the jury be charged that plaintiff had been guilty of laches and that there could be no recovery because the action was not brought for more than six years after the date of the sale of the copper stock; (b) the refusal of the court to charge (1) that the acceptance by plaintiff of the coal stock in exchange for his copper stock amounted to a relinquishment of all rights of action, if any existed, under the original promise and that the only evidence to be considered by the jury was that relating to the exchange, and (2) that there could be no recovery because the plaintiff at the time of the exchange was president of the coal company and the transfer was his act and not that of the defendant. An examination of the testimony for the plaintiff discloses that the defendant was largely interested in and the fiscal agent of the Copper Tungsten Company, formed for the purpose of operating mining claims in the State of Arizona, and advertised and recommended the stock of this company for sale, and that he later occupied the same relation to the Columbia Coal and Power Company, formed for the purpose of

operating certain coal properties in the State of Ohio. Plaintiff had been acquainted with defendant in the City of Johnstown for a period of about twenty-five years and was solicited by defendant to purchase stock in the copper company. On April 23, 1917, plaintiff bought four hundred shares of the copper stock at $1.50 per share, or a total of $600, which was paid in cash. With respect to this purchase plaintiff testified: "Q. What did he [defendant] say at the time you made this purchase and prior thereto? A. In order to get me to buy, before I would agree to buy he said he would stand back of it, and he says, 'John, at any time you are dissatisfied you can have your money back with interest.' I took Mr. Cauffiel's word and put the whole dependence on his offer because I had a little dealings with him before and was willing to stand by his agreement. I took it on the express purpose [promise?] that if it was not good that he would pay it back to me with interest as he said he would." On May 23, 1917, plaintiff purchased an additional five hundred shares of this stock at $2 per share, or a total of $1,000, making a total investment of $1,600, for which the verdict was recovered. With respect to this second purchase plaintiff testified: "He [defendant] said the stock was going up and would go to three dollars in a short time and it was then up to two dollars. I took five hundred shares more at two dollars a share, making one thousand dollars, nine hundred shares in all, and I gave him one thousand dollars. He made the same promises again to me, that he would pay it back with six per cent interest if I became dissatisfied."

The plaintiff then stated that he went with the defendant to Arizona in the summer of 1918 and returned about one year later at the instance of defendant and took charge of the property for a few months; that defendant made him president of the company; that he served as such during the summer of 1919; and that

when he came back that summer he "just simply fell out in the fall" and was sent by defendant to Ohio. In the latter part of 1919 and the spring of 1920 plaintiff was in Ohio leasing coal lands at the instance of defendant for the Columbia Coal and Power Company and was given one share of stock in this company in order that he might serve as its president. With relation to the organization of this company the plaintiff testified that defendant "gathered up his officers here in Johnstown. I was taken for president......and we picked up two men in Ohio" as directors. Plaintiff, testifying further, stated that in May, 1920, the defendant wanted the persons who had purchased copper stock "to bring it in and swap it for" stock in the coal company. In reply to a question relative to the transfer of his stock plaintiff testified: "Yes, and he said he was going to turn this coal mine over purposely for us fellows to let us down, being that we did not make anything in Arizona, and he was going to give us part of our stock in coal and we could retain the balance of our stock in Arizona. I fetched in my Arizona stock to him and he kept it all and he returned me eighteen shares of Columbia Coal & Power Company stock. When he went to make this deal he came to me and told me, he said 'If you turn this over this promise will stand just the same as the Arizona, that I will stand right up and I will take it back from you at any time with interest if you are not satisfied with it,' so I turned it over to him on this promise." The par of the coal company stock was $50 per share. In June, 1925, the coal company stock having proved worthless, plaintiff tendered his certificate for said eighteen shares to defendant and demanded a return of his investment, with interest, in accordance with the alleged promises of defendant to return his money, with interest, at any time plaintiff became dissatisfied. Upon defendant's refusal to accept the certificate and return plaintiff's money, suit was brought on August 17, 1925,

which was more than six years after the original pur-
chase of the copper stock but within six years from the
date of the exchange of the copper for the coal stock.
The defendant admitted the sale of the first block of
four hundred shares of copper stock on April 23, 1917,
but testified that the price was $1 per share. With
respect to the sale of the block of five hundred shares
of copper stock, defendant denied any connection there-
with and testified that this stock was sold to plaintiff
by a man by the name of Holt out in Arizona, to which
plaintiff replied in rebuttal that he had never heard of
such a man until he heard of him in court and that he
bought the stock from defendant and gave him the
money in his office. The defendant testified that plain-
tiff had voluntarily exchanged his copper stock for
coal stock and absolutely denied the making of any
promises at any time to the effect that he would return
plaintiff's money, with interest, if plaintiff became dis-
satisfied. There was therefore a sharp conflict in the
testimony requiring the submission of the case to the
jury unless there was some legal obstacle sufficient to
prevent a recovery.

On the question of laches raised by defendant's first
point it is to be observed that there was no time limit
within which the demand for the return of plaintiff's
money was to be made. It was to be refunded ''at any
time'' plaintiff became dissatisfied. At most this
meant that the demand should be made within a reason-
able time according to the circumstances and not be-
yond the period prescribed by the statute of limita-
tions. Under the evidence the court could not declare
that plaintiff had been guilty of laches. In view of
plaintiff's testimony above quoted, to the effect that
when exchange of stock was made in May, 1920, the
defendant, speaking of the coal stock and the proposed
exchange of it for the copper stock, explicitly renewed
the promise made in 1917 and applied it to the substi-

tuted stock, the trial judge was entirely justified in declining to affirm defendant's point asking him to charge that there could be no recovery because the action had not been brought within six years after the original sale of the copper stock. This testimony was for the jury, and, if believed, showed an unconditional acknowledgment and renewal of the original promise sufficient to toll the statute.

By defendant's fourth and fifth points the trial judge was asked to charge in effect that there could be no recovery on the original promise for the reason that the acceptance by plaintiff of the coal stock amounted to an accord and satisfaction. As stated by our Supreme Court in Davis v. Cauffiel, App., supra, with relation to a somewhat similar contention in that case all the circumstances under which the transfer was made were for the jury and the respective contentions were submitted to the jury in the following language: "Now, members of the jury, you must consider this proposition, that is, if, when this Copper Tungsten stock was traded in for the Columbia Coal & Power Company stock, it was surrendered without any condition as to repurchasing it, that would end this matter so far as this is concerned, because there would be a trade, a satisfaction, a taking over of this stock by the defendant in lieu of these promises but if at that time, as alleged by the plaintiff, the former promises were renewed, that the stock should be taken on the same condition as the Copper Tungsten stock was taken, then that promise would hold good, and if you believe the plaintiff that the defendant did enter into an agreement to repurchase this stock, then you would find for the plaintiff."

The contention of defendant that it was the duty of the trial judge to instruct the jury that there could be no recovery because at the time of the exchange the plaintiff was the president of the Columbia Coal and

Power Company and therefore "the transfer was an act of the plaintiff and not of the defendant" is without merit. Of course the certificate for the shares in the coal company was signed by the plaintiff as president of that company but as indicated by the evidence the plaintiff was merely the nominal president of these companies. His only qualifications to perform the duties of the office of president of these mining companies, as disclosed by the testimony, were that he had been a carpenter for forty years and a friend of the defendant for twenty-five, and it is a fair inference from all the testimony on this subject that he was merely the agent and representative of the defendant who was practically in control of both companies. Although the question is not specifically raised by the assignments, counsel for appellant argue in their brief that the testimony of plaintiff relative to the exchange of stock is not corroborated and even if believed does not measure up to the standard necessary to modify the terms of the written instruments (the application or subscription for the stock of the coal company and the stock certificate) by which the exchange was effected. The written application of plaintiff for the coal stock was offered in evidence as one of defendant's exhibits. This exhibit was not printed with the record but in the view we take of the matter its omission is immaterial. One of the contentions advanced by this defendant in the case of Roberts and Boyer v. Cauffiel, App., supra, was identical with the question now under discussion and was specifically ruled against him in that case. There, as here, it was contended that the subscription and certificate could not be varied or modified by parol evidence except under the exceptional circumstances specified in the two-witness rule. In that case Mr. Justice SIMPSON pointed out that the rule invoked is applicable only where the suit is between the parties to the written contract or

their privies. It is as true here as it was there that the contest is not between plaintiff and the coal company and that plaintiff is not attempting to vary the writings in any way. The collateral promises upon which plaintiff sued were not a part, nor were they within the scope, of any of the written instruments offered in evidence, and, as expressly stated by the Supreme Court, "the party having the burden of showing that he expended his money on the faith of a collateral promise of the opposite party is required to sustain his contention only by a fair preponderance of the evidence." As we view this case it was one necessarily for the jury and was fairly submitted by the trial judge. The jury adopted plaintiff's version of the facts and after a careful reading of all the testimony we are not surprised that they did so. At least it is clear that the court below, sitting in banc, did not abuse its discretion in refusing a new trial. As there was evidence which, if believed by the jury, was sufficient to sustain the verdict, binding instructions as requested by defendant could not be given and his motion for judgment n. o. v. was properly denied.

The assignments of error are overruled and the judgment is affirmed.