ASA S. EDGERLY, PLAINTIFF IN ERROR, V. J. F. GARDNER
AND OTHERS, DEFENDANTS IN ERROR.

1. **Partnership:** PATRONS OF HUSBANDRY: STATE AGENT OF
STATE GRANGE: MEMBERS OF STATE GRANGE NOT PART-
NERS. The plaintiff was a member of the society known as
" The Patrons of Husbandry," and the defendants members of
the " State Grange " of the same organization. The action
was upon an alleged breach of warranty in the sale of a Wer-
ner harvester by one McCaig, the state agent of " The Patrons
of Husbandry," appointed by the " State Grange." *Held*,
That as to members of subordinate " Granges," whose repre-
sentatives they were, the defendants were not partners, nor lia-
ble for the acts of said agent.

2. **Warranty:** RESCISSION OF SALE. In the sale of a " Werner
harvester " the warranty was in substance that it was " equally
as good " as the " Marsh harvester," and if it were not, the
purchaser " could bring it back, and get his money back."
*Held*, That in order to rescind the sale, it was not sufficient for
the purchaser to show merely that he " wrote " to the seller
" that it had proved worthless," and that he " tendered the ma-
chine subject to his order," but that in order to do so it was
necessary for him to establish that the machine was not equal
in its execution to the " Marsh harvester," and that he had re-
turned it to the seller.

ERROR to the district court of Lancaster county.
Tried below before POUND, J. The facts appear in
the opinion.

*Lamb, Billingsley & Lambertson,* for plaintiff in error.

1. What is the character of the organization known as the Nebraska State Grange of the Patrons of Husbandry? It is difficult to bring it within the true definition of any branch of the law or fix upon it the duties and liabilities incident to any department of the law. The Grange possesses nearly all the characteristics of a corporation, only it is not incorporated. It is a sort of floating partnership, which is not dissolved by the withdrawal or death of a member, as in the ordinary co-partnerships. Instead of being like ordinary co-partnerships, which are ever dying, and being ever renewed, it possesses the attribute of immortality incident to corporations. Such co-partnerships are recognized in the law. *Tyrell v. Washburn,* 6 Allen, 467. *Tenney v. N. E. Protective Union,* 37 Vermont, 64. *Cutler v. Thomas,* 25 Vermont, 73.

2. The objection is made that no recovery can be had on the Painter claim because he was a member of the State Grange. But this rule has no force when a partner is hired to do a certain specific work, for which he is to be paid a specific sum, or what his services are reasonably worth over and above his interest in the profits. He can sue the partnership at once, without resorting to a bill in equity. In this case the state purchasing agent, the executive committee, and the Grange all agreed that he should be paid for his services. He would have as much right to sue the Grange direct as any officer of the Grange who was rendering extra services which it was not his duty to do in common with the other partners. One who is clerk and also in partnership in a particular business with his employer, may, where his duties as clerk and partner are distinct, sue for the salary due him in the former

capacity without resorting to a suit for the settlement of the partnership transactions. *Alexander v. Alexander*, 12 La. Ann., 588. *McCall v. Oliver*, 1 Stew. (Ala.), 510. *McGehee v. Dougherty* 10 Ala., N. S., 863. 10 Ia., 332. 49 Me., 252. 44 N. H., 376. 23 Ark., 466. *Robinson v. Green*, 5 Harr. (Del.), 115. *Gibson v. Moore*, 6 N. H., 578. *Gulick v. Gulick*, 14 N. J. L., 578. *Clark v. Dibble*, 16 Wend., 601. *Koehler v. Brown*, 31 How. Pr. (N. Y.), 235. *Neil v. Greenleaf*, 26 Ohio State, 570.

*T. M. Marquett*, for defendants in error.

1. The State Grange was a representative body, political in its nature; its members elected by the members of the subordinate Granges empowered to act for the good of all the grangers in the state.

2. Said body met annually, and at its meetings in 1874 it proposed a scheme for the good of all the grangers, which in substance was that an agent should be appointed through whom grangers might obtain their supplies and farming implements cheaper than in any other way. For this purpose the different grangers who were able were to furnish the agent with money.

3. This plan was approved by the grangers throughout the state, and acted upon. The plaintiff, approving of this plan, went to the agent, bought farming implements, and now says that the agent defrauded him, and comes to the sage conclusion that the persons who suggested the plan are liable to him.

4. On the other hand, we claim that the agent was just as much the agent of one granger as he was the agent of another. If the State Grange suggested the plan, the members of the subordinate Granges approved of it, and furnished the money. The agent

acted for all in the order, and one granger who has been defrauded cannot pick out a few other grangers and make them stand good for the fraud or act of a common agent, for if he was the agent of one he was the agent of all the grangers.

5. In dealing with this common agent each granger had to make his own bargain and look out for his own interests.

6. And for the acts of the agent one of the order was no more liable than another.

7. The remedy is against the agent and his sureties or the person who contracted the debt.

8. A party claiming to act as agent must show a responsible principal. *Quigley v. De Haas*, 82 Pa. St., 267. *McCormick v. Bush*, 38 Texas, 314.

*Schoenheit & Thomas*, on same side.

1. The plaintiff attempts to sustain the liability of defendants on the ground that they were a partnership. We contend that the evidence shows that there was no partnership, but on the contrary that the association was a mere agency. It had none of the elements of a partnership. It had no capital, and no business whereby profit was to be made. There were no profits to be divided and no losses to be borne in common. *Waugh v. Carver*, 2 H. Bla., 246. *Coope v. Eyre*, 1 H. Bla., 37. Gow on Part., 1. 3 Kent's Com., 23. Story on Part., 2, 3, 7, 22, 23. Collyer on Part., B. 1, Ch. 1, Sec. 1, p. 11. *Johnson v. Miller*, 16 Ohio, 431. *Dwinel v. Stone*, 30 Me., 384. *Pomery Salt Co. v. Davis*, 21 Ohio St., 555.

2. It was not the intention of the defendants to form a partnership, but merely an agency. Partnership is the creature of a voluntary contract. If the defendant did not intend to enter into a partnership, then this court, where third persons have not been

misled, will not hold them to be partners.    *In re Worcester Corn Ex. Co.*, 19 E. L. and E. Rep., 627.

LAKE, J.

The plaintiff in error brought his suit in the court below upon four causes of action, and recovered upon the last two.    Upon the first two there was a verdict and judgment against him, which, because of certain alleged errors, he has brought to this court by petition in error for review.

Of the several errors alleged, the only ones that are in a situation to be examined are those which question the sufficiency of the evidence to sustain the verdict. Those relating to the admission and the rejection of testimony were not properly brought to the attention of the district court in the motion for a new trial, and therefore cannot be considered here.

As constituting the *first* cause of action, a breach of warranty is alleged in the sale of a "Werner harvester" to the plaintiff by one William McCaig, the agent of the defendants.    The *second* cause of action is a claim for certain services, rendered by one Painter, as clerk and book-keeper under said McCaig in the business of his agency, which claim had been assigned to the plaintiff.  The defendants in error were members of what is known as "The Nebraska State Grange of the Patrons of Husbandry."    The action is sought to be maintained against them on the theory that by being members thereof, and unincorporated, they were in legal contemplation partners in whatever business the organization saw fit to engage in.    That this would be so as to strangers dealing with this agent without knowledge of the true character and purposes of the association may be true, but is it true as to one in the situation of the plaintiff?

Of the objects and powers of the "State Grange" but very little is disclosed by the record before us. It does, however, appear from the evidence that its membership was composed of delegates sent from the subordinate "granges" located in different portions of the state, and that, ostensibly at least, the work of these delegates was directed to the advancement of the interests of those whom they represented. It also appears that, at the annual meeting of the "State Grange" in December, 1873, the subject of the creation of a state agency, through which members of the subordinate "granges" might advantageously purchase various articles of farm machinery, was considered. On the report of a committee, to whom the subject was referred, the scheme was adopted, and William McCaig duly elected such agent. This agent was required to give a bond to the "master," or chief officer of the association, in the sum of $25,000 for the faithful discharge of the duties of the office. His books and bank account were at all times to "be subject to the inspection of the master, secretary, and executive committee." He was required, also, to "give a full and correct statement of the transactions of his office, annually, to the executive committee." His compensation for services was to be such percentage of "purchases and sales made by him as shall be ordered by the executive committee, not exceeding in the aggregate $1,000." All excess of profits derived from the business of the agency over this sum was to "be placed to the credit of the state grange." There is also testimony to show that the "State Grange" undertook, under certain circumstances, to be responsible for money advanced by the subordinate granges, or their members, "for the purpose of purchasing agricultural implements or supplies." But there is not a syllable of evidence to show that it was within the

contemplation of any one connected with the order of "Grangers" that the members of the "State Grange" should, or did, incur any individual responsibility for the conduct of the state agent. It is evident that, within the order at least, it was understood that for injuries resulting from the faults of this agent his bond to the master of the "grange" furnished the only security for remuneration.

In the creation of this state agency, and in all they did in connection therewith, the defendants, doubtless, acted in the utmost good faith, and with the sole view of benefiting their constituents, of which the plaintiff was one, he being at the time a member of a subordinate "grange." Under these circumstances it seems to us that the plaintiff is not in a situation to complain of the defendant's conduct; and that, even if he have a cause of action against anybody for defects in the harvester in question, it is most certainly not against those whose scheme he availed himself of, and through whose efforts in his behalf he sought to profit.

And these considerations are applicable as well to the second cause of action also, which in the hands of the plaintiff is subject to any defense that could have been made to it in a suit brought thereon by the assignor. This man Painter, by whom the services which form the basis of the claim were rendered, was an active member of the order, served on various committees of the "State Grange," and was thoroughly conversant with all its workings. He certainly had no reason to, nor could he have, supposed that the defendants were personally liable to him therefor.

In addition to what we have already said there is still another sufficient reason why the verdict of the jury upon the first cause of action should not be disturbed. The harvester in question, as the evidence

shows, was recommended by McCaig to be as good as the Marsh harvester. His warranty, to use the language of the plaintiff himself, was: " He," McCaig, " remarked that it was equally good, and in some respects superior," to the Marsh harvester, " and if not, I could bring it back and get my money back. Upon that recommendation, on the 21st of June I purchased a harvester, and paid $150." Such being the terms of the sale, in order to entitle the plaintiff to rescind it he must show that the machine was not equal in its execution to the Marsh harvester, and, in addition to this, that he returned it to the seller. Now, while it is very clearly shown by the testimony that, owing probably to some defect in its construction, this machine could not be made to operate satisfactorily, still we are left in total darkness as to its relative merits in comparison with a Marsh harvester. On this point there is no evidence. Again, when it was ascertained that this machine would not answer the plaintiff's purposes he did not return it, as by the terms of the sale he was required to do if he would rescind it, but simply "wrote to McCaig" that he had tested it, " that it had proved worthless," and that he " tendered the machine subject to his order." Whether McCaig ever received this letter, or whether it was even properly mailed to him, does not appear. However that may be, the condition by which the plaintiff undertook to return the property, in order to rescind the sale, is not satisfied by a written notification to the seller that it is held subject to his order. As was said in *Nichols v. Hail*, 4 Neb., 210: " Where in a contract of warranty there are conditions precedent to be observed and performed by the purchaser, he must show a fair, reasonable compliance with the terms of the contract on his part, or he will not be permitted to enforce it against the warrantor."

We think the verdict is fully supported by the evidence and the law of the case, and the judgment must be affirmed.

JUDGMENT AFFIRMED.