[No. 9981.   Department Two.   October 14, 1912.]

A. L. OLSEN, *Appellant*, v. NORTHERN STEAMSHIP COMPANY, *Respondent*.[1]

CORPORATIONS — STOCK — SALE — OPTION TO RESELL — TIME AND METHOD OF EXERCISE. An agreement providing that, in case plaintiff should be discharged from defendant's employ, the defendant would, within six months thereafter, at plaintiff's option, take redelivery of defendant's corporate stock purchased by plaintiff, and repay plaintiff par therefor, fixes an option for a fixed period which must be exercised within the six months by redelivery of the stock, and it is not sufficient that notice of election to redeliver, with a demand, was made by letter posted within the time limit.

SAME—OPTION—TENDER—WAIVER. Failure to answer a letter giving notice of an election to exercise an option to redeliver stock, posted on the last day of the option period, does not constitute a waiver of the failure to tender the stock as required by the option, where the letter was not received until the option period had expired.

SALES—ULTRA VIRES ACTS—REPURCHASE OF STOCK. If a sale of stock to a corporate employee, with an agreement by the corporation to repurchase its own stock in case of discharge, was *ultra vires*, it was divisible, and not being void *in toto*, the sale was absolute.

Appeal from a judgment of the superior court for King county, Prigmore, J., entered July 1, 1911, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*William H. Gorham* and *Samuel H. Piles*, for appellant.

*Bridges & Bruener* (*Trefethen & Grinstead*, of counsel), for respondent.

[1]Reported in 127 Pac. 112.

ELLIS, J.—In this action the plaintiff sought to recover the money paid for twenty-five shares of the increased capital stock of the defendant corporation, of a par value of $100 per share. The facts necessary to a proper determination of the action, as we view them, are few, admitted, and uninvolved. In April, 1909, the defendant sold and delivered to the plaintiff twenty-five shares of its increased capital stock for $2,500 cash, upon the following considerations, as found by the court without exception on either side:

"(1) That the defendant company should employ plaintiff as master mariner of the steamer A. G. Lindsay owned by defendant, at a salary of $200 per month; one-half pay if the vessel should be laid up for repairs; (2) that should plaintiff be discharged as master of said steamer by defendant company, the defendant would, within six months after said discharge, at plaintiff's option, take redelivery of said shares and repay plaintiff the par value thereof."

The plaintiff was at once employed and entered upon his duties as master pursuant to the agreement, and so continued until December 18, 1909, when at his own request he was temporarily laid off, and on February 24, 1910, he was discharged by the defendant. On August 24, 1910, the plaintiff mailed a letter, postage and registry fee prepaid, addressed to the president of the defendant company at Aberdeen, Washington, reading as follows:

"Six months having expired since my discharge as master of the steamship 'A. G. Lindsay,' you are hereby requested to fulfill your agreement with me to buy my twenty-five shares of the capital stock of the Northern Steamship Company at par, to wit: $2,500, delivery of which shares will be made to you at Seattle or Aberdeen, as you may designate through my bank or its correspondent, upon payment by you of $2,500 to my account. Please advise me whether you wish delivery of shares at Seattle or Aberdeen, that I may advise you in turn what bank will deliver shares upon payment of money."

This letter was received by the defendant's president on August 26, 1910. So far as the record shows, it was never

answered. On September 12, 1910, the plaintiff tendered to the defendant the twenty-five shares of stock, duly endorsed and demanded repayment of the $2,500. The defendant refused to accept the tender, and refused to make the payment. The cause was tried to the court without a jury. From a judgment of dismissal, with costs against the plaintiff, he has appealed.

The respondent contends that the contract, in so far as it provided for a redelivery of the shares and the return of the purchase price, was *ultra vires* on its part and void. We find it unnecessary, however, to discuss or decide this question, since it seems to us that the terms of the admitted agreement as found by the court make it plain that the judgment must be affirmed. The option accorded by the contract to the appellant could only be exercised by a redelivery of the shares within six months after his discharge. It was only upon and by such redelivery within that period that he could charge the respondent with any duty to accept redelivery and repay the money. The option was for a fixed period of six months, and its mode of exercise was fixed by the undertaking of respondent to "take redelivery" and repay the par value "within six months after said discharge." The agreement did not provide that the respondent would repay the money if notified within six months of appellant's election to redeliver the stock at some future time. It was not an option to elect within six months, but to redeliver within that time. The option did not contemplate a mere communicated mental election to return the stock within the time fixed. An actual redelivery or tender of redelivery was necessary. *Orvis v. Waite*, 58 Ill. App. 504; *Edgerly v. Gardner*, 9 Neb. 130, 1 N. W. 1004.

That was the only thing which would enable the respondent to take redelivery within that time as provided in the agreement. "The condition being lawful, it is not competent for the court to dispense with its performance." *Waterman v. Banks*, 144 U. S. 394, 401.

The stock itself not having been tendered within the life of the option, the option lapsed by its own terms. It is a general rule that, in case of an optional sale, where the time within which the option shall be exercised is fixed by the contract, that time is, in the very nature of the case, of the essence of the contract, unless it is waived or performance within that time is prevented by the other party. It is one of the terms of the contract. To hold otherwise would be to make a new contract for the parties. In the case before us, the option by its terms was to be exercised within the six months. The redelivery on the one hand within that time was a condition precedent to the duty to make repayment on the other.

"It may be laid down as the settled rule, that where time enters into the performance of a condition precedent, the plaintiffs must aver accordingly, unless strict performance is waived or otherwise discharged by the defendant. In case a discharge of the strict performance be relied upon, as a waiver by the defendant, it must be pleaded. The rule must apply—I can preceive no difference in the principle—to an hour as well as to a day. . . . A contract, to be performed at a given hour, must necessarily be governed by the same principles as when to be performed on a given day; the same rules of pleading and of evidence must apply to the one case, as to the other." *Shinn v. Roberts*, 20 N. J. L. 435, 446, 43 Am. Dec. 636.

See, also, *Pollock v. Riddick*, 161 Fed. 280; *Henderson v. Wheaton*, 139 Ill. 581, 28 N. E. 1100; *Dickey v. Winston Cigarette Mach. Co.*, 117 Ga. 131, 43 S. E. 493; *Orvis v. Waite, supra; Patent Title Co. v. Stratton*, 89 Fed. 174; *Waterman v. Banks, supra; Edgerly v. Gardner, supra, Kelsey v. Crowther*, 162 U. S. 404.

A mere offer to tender is not equivalent to a tender, and the person to whom it is made is not bound to say whether he will accept the money or thing until it is actually produced. 38 Cyc. 143.

"A promise to pay in chattels, or in anything of a fluctuating value, must be strictly complied with as to time, and

a tender of the thing to be paid cannot be made before or after the day fixed for payment." 38 Cyc. 148.

See, also, *Kentucky Distilleries & Warehouse Co. v. Warwick Co.*, 109 Fed. 280.

The contract here in question cannot be construed, as urged by the appellant, as a continuing offer on the respondent's part to repurchase the stock throughout the six months, which constituted a contract to repurchase upon the appellant's mailing an acceptance on the last day of that period. The agreement was not an option to enter into a contract to sell the stock, but was an option to sell the stock. *Pollock v. Riddick, supra.* The contract as a whole was an absolute sale of the stock to the appellant, if not rescinded in the manner and within the time fixed in the agreement itself, and this was wholly to be done by the appellant himself. *Henderson v. Wheaton, supra.*

From the day the agreement was made it was a complete contract irrevocably fixing the rights of each party. Their minds had met when the original agreement was made. No new contract was either contemplated or made. The appellant was given the option of redelivering the stock and receiving the money, but only within the life of the option. Having confessedly failed to tender the stock within the time fixed for its redelivery, he can no longer insist upon the right to redeliver and demand the money.

It cannot be said that the failure to answer the letter of the appellant, offering to tender the stock, was a waiver of tender by the respondent. The respondent had no chance to answer that letter within the six months. It is admitted that it was not received until two days after the option had expired. Had it been mailed in time to be answered within the life of the option, there might be some force in a claim that the failure to object or state a place of delivery was a waiver of tender within the time. As it was, there is no ground for such claim. *Pierce v. Lukens*, 144 Cal. 397, 77 Pac. 996.

We find it unnecessary to discuss the contention of the appellant that, if the contract to accept redelivery was *ultra vires*, it rendered the contract void *in toto* and he was therefore entitled to a return of his money, further than to say that, if the condition was void, it was so because its performance would be a fraud upon other stockholders and upon creditors of the respondent corporation. To hold that the contract was indivisible, and that the condition was *ultra vires* and therefore rendered the whole contract void, would be to perpetrate the very fraud upon other stockholders and creditors to avoid which is the only logical ground for the argument that the condition is *ultra vires*. On reason, therefore, as it seems to us, it must be held that, even if the condition was *ultra vires* (a thing which we do not decide), it alone was void, that the contract was divisible, and the sale absolute. *Boley v. Sonora Development Co.*, 126 Mo. App. 116, 103 S. W. 975.

The judgment is affirmed.

MOUNT, C. J., MORRIS, and FULLERTON, JJ., concur.