[No. 25113.   Department Two.   December 5, 1934.]

ERNEST N. HARRIS, *Appellant*, v. PUGET SOUND BRIDGE & DREDGING COMPANY, *Respondent and Cross-appellant*.[1]

*Battle, Hulbert & Helsell*, for appellant.

*Roberts & Skeel* and *Wm. Paul Uhlmann*, for respondent and cross-appellant.

HOLCOMB, J.—This action was brought by appellant to recover against respondent upon two causes of action stated in the complaint. In his first cause of action, appellant seeks to require respondent to repurchase five shares of seven per cent cumulative, partici-

[1]Reported in 38 P. (2d) 354.

pating, preferred stock of Georgia Hotel Company, Ltd., issued to him. In the second cause of action, he sues to require respondent to repurchase ten shares of the same class of stock issued to a Mrs. Rogers, at the request of her husband, J. W. Rogers, who bought and paid for the stock. Both Rogers and his wife assigned their rights of action, if any, to appellant.

The rights asserted by appellant are based upon a letter given by respondent to its employees, dated April 21, 1926, which was upon the letterhead of respondent and signed by it by its then vice-president and general manager. It is as follows:

"To the Employees of the Puget Sound Bridge and Dredging and Company, and of The Dredging Contractors Limited:

"This company is in a position to offer to its employees the opportunity to purchase seven per cent Cumulative Participating Preferred Stock of the Georgia Hotel Company Limited, of Vancouver, British Columbia, and has reserved therefor a block of $50,000 par value stock.

"This stock carries with it a bonus of twenty per cent of common stock of the Georgia Hotel Company Limited, in which the ownership of the hotel rests.

"The officers of the company have been mindful of the fact that many of its employees would like to participate in the affairs of the company to a greater degree than they have been able to do in the past, and it is with this thought in mind that the stock is being offered for sale at par on a monthly payment basis, or for cash, as may be desired by the purchaser, a subscription blank being attached hereto on which the purchaser can express his preference. We suggest that the stock be bought on a monthly payment plan of ten per cent cash and ten per cent per month until it is paid for. This suggestion is optional with the purchaser.

"Six per cent interest will be paid by the company on the funds paid in as part payment on the stock, and

when the purchase price is completed the stock would be delivered and bear seven per cent interest from said date of delivery.

"Should any of our employees find it necessary to sell this stock, it will be bought back on the same terms at which we are selling it; namely, par plus the common stock bonus. On this basis, this should be an attractive investment.

"Kindly fill out the blank enclosed, being particular to give the full name of the person in whom the title to the stock should rest and the terms on which it is desired to make the purchase.

"As the value of the stock is $100 per share, subscriptions should be made so that it will not be necessary to sell a partial share of stock to any one. Subscriptions as low as $100 will be accepted."

Pursuant to this offer, appellant, on July 10, 1926, purchased five shares of the preferred stock of the hotel company, to be paid for in monthly installments. The first installment was paid July 10, 1926, and the final installment was paid March 30, 1927. The certificates for the stock purchased by appellant were issued to him by the hotel company under date of March 23, 1927, but were not delivered to him until May 24, 1927.

The second cause of action alleged in the complaint of appellant, the assigned claim of Rogers, is upon his purchase of ten shares of stock of the hotel company in May, 1926, and paid therefor five hundred dollars in cash, and the balance in monthly installments of fifty dollars per month, the first installment being paid May 15, 1926, and the last installment on February 15, 1927. This certificate was issued to Mrs. Rogers under date of March 23, 1927, but for some reason was not delivered until May 24, 1927.

The record shows that respondent constructed the Georgia Hotel, in Vancouver, B. C., through a Canadian subsidiary company, the Dredging Contractors,

Ltd., owned by it, and undoubtedly had an interest in the stock of the hotel company, so that it was considered that the sale of the hotel company's stock through respondent to its employees would be of benefit to all parties concerned. The hotel company manifestly ratified the offer, issued its stock accordingly, and respondent probably could have been compelled to perform.

This action was not commenced until March 20, 1933. The trial court entered judgment in favor of appellant on his first cause of action, but denied recovery on the second cause of action, consisting of the Rogers assigned claim for one thousand dollars. The trial court concluded that the statute of limitations began to run from the date of the last payment on each subscription instead of the date of the contract. Judgment was entered accordingly, from which both parties have appealed from the adverse judgment against each of them. For brevity, we shall mention defendant as respondent only.

The trial court found that both appellant and Rogers found it necessary to sell the stock subscribed for by them and notified respondent of their election so to do, which respondent refused to perform. These findings are not disputed by either party. The only thing in dispute as to appellant is in making conclusion of law No. 2 and denying appellant judgment on his second cause of action. The matter contested by respondent on its cross-appeal is in making conclusion of law No. 1 and granting to appellant judgment on his first cause of action.

Appellant urges us to consider as controlling the following dates: April 21, 1926, respondent's offer to sell; February 15, 1927, last installment paid by Rogers; March 23, 1927, stock certificates actually issued to Rogers by Georgia Hotel Company, Ltd.;

May 24, 1927, stock certificates mailed to Rogers; January 23, 1933, Rogers demanded that respondent repurchase, which demand was refused; March 20, 1933, suit was started to compel performance.

On its cross-appeal, respondent contends that the statute of limitations began to run on both causes of action as soon as the contracts of purchase of stock were signed. In the case of Rogers, the contract was signed and delivered before July 19, 1926; in the case of appellant, on his own purchase, on July 10, 1926.

Appellant emphatically insists that respondent did not agree to refund all payments made on account of the purchase upon demand, but agreed to buy the stock back upon demand. It is then asserted that respondent's obligation to repurchase could not have been enforced by an employee who had not completed his purchase and obtained possession of the stock. It is argued from that premise that Rogers, to enforce the obligation of respondent to repurchase, would first be obliged to acquire the stock and then make proper demand and tender. To that effect is cited *Olsen v. Northern Steamship Co.*, 70 Wash. 493, 127 Pac. 112; *Handley Investment Co. v. Trenholme*, 91 Wash. 146, 157 Pac. 472; and several outside cases.

The *Olsen* case, *supra*, was upon an entirely different sort of contract. The contract sued upon there was a verbal contract between Olsen and the steamship company whereby the steamship company sold and delivered to Olsen shares of stock of a certain amount, and further agreed that, if Olsen should be discharged as master of its steamer by the steamship company, it would, within six months after the date of the discharge, at Olsen's option, take redelivery of the shares purchased by him and repay him the par value thereof. Olsen entered the employ of the steamship company and was discharged on February 24,

1910. On August 24, 1910, Olsen mailed the representative of the steamship company a letter demanding that it take the company's stock off his hands according to the agreement. The stock itself was not tendered within the life of the option, so that this court held that the option lapsed by its own terms. We there held, as was clearly right, that redelivery of the stock was necessary, and since no redelivery was tendered within the six months, no right of action existed. We further said:

"The agreement was not an option to enter into a contract to sell the stock, but was an option to sell the stock. *Pollock v. Riddick, supra* [161 Fed. 280]. The contract as a whole was an absolute sale of the stock to the appellant, if not rescinded in the manner and within the time fixed in the agreement itself, and this was wholly to be done by the appellant himself. . . .

"From the date the agreement was made it was a complete contract irrevocably fixing the rights of each party. Their minds had met when the original agreement was made. No new contract was either contemplated or made. The appellant was given the option of redelivering the stock and receiving the money, but only within the life of the option."

We think the construction of that contract to the effect that it was an absolute sale of the stock to the buyer in that case is contrary to the position taken by appellant here.

The *Handley Investment Co.* case, *supra,* is no more in point. It was upon an action for an unpaid stock subscription of a solvent corporation, call for which was made payable at a future date, and we held that the action accrued and the statute of limitations commenced to run from the date the call was due and payable, and not from the date of the call.

*Brooks v. Trustee Co.,* 76 Wash. 589, 136 Pac. 1152, 50 L. R. A. (N. S.) 594, seems to us the governing

case on both causes of action. In that case, we had before us a contract which read:

"Mrs. E. A. Brooks,                    Seattle, May 24, 1906.
"City: In consideration of the purchase by you on this date of Inv. Bonds in our Property No. 4, to the extent of One Thousand Fifty Dollars (1050) we hereby agree that after you have consulted your sister or any one else in regard to this investment you desire to withdraw your investment you may at any time return these bonds to our office and withdraw your entire investment with a 6 per cent earning per annum.
"The Trustee Co.,
"per Wm. F. Howe, Trust Officer."

We there said:

"It is plain, we think, that the contract above set out was a contract to purchase, with the option at any time to return the bonds and withdraw the investment with six per cent interest per annum. It is also plain that the words 'at any time' merely gave a reasonable time to the respondent within which to act. The contract, upon its face, was not intended to remain in force forever or to run in perpetuity. . . .

"This agreement was made on May 24, 1906. The action was not begun until September 16, 1912, or more than six years after the contract was entered into. It is plain upon the face of it that the offer to withdraw the investment was not made within a reasonable time, nor even within the statute of limitations upon written instruments which, in this state, is six years.

"The respondent's cause of action, if any she had, began to run at the date of the contract, viz: May 24, 1906. If she had accepted none of the earnings of the bonds during the time between the date of the contract and the date of bringing the action, it is clear that the statute of limitations has more than run upon the contract, even if the phrase 'at any time' may be held to mean at any time within the period of the statute of limitations.

"In *Bennett v. Thorne*, 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, this court said:

" 'Again, it has been many times held—and this is another important reason why the action should be held to be barred—that it is not the policy of the law to put it within the power of a party to toll the statute of limitations. And this court has at least twice held that the failure of a party to take the necessary steps to perfect his right of action, although such steps were conditions precedent to the right, would not prolong the statute. *Spokane County v. Prescott, supra* [19 Wash. 418, 53 Pac. 661, 67 Am. St. 733]; *Spinning v. Pierce County*, 20 Wash. 126, 54 Pac. 1006.'

"It is unimportant when a demand was made for the return of the money. The right of action accrued at once upon the contract and if, as stated above, the time within which the action might be maintained extended to the period of the statute of limitations, that time had fully run when this action was brought."

See, also, to the same effect, *Henderson v. Wheaton*, 139 Ill. 581, 28 N. E. 1100; *Winchester & Lexington Turnpike Co. v. Wickliffe's Adm'r*, 100 Ky. 531, 38 S. W. 866, 66 Am. St. 356.

Cases relied upon by appellant, of which *Sheaf v. Dodge*, 161 Ind. 270, 68 N. E. 292; *Johnston v. Keefer*, 48 Ida. 42, 280 Pac. 324; and *Jenkins v. Marsh*, 22 Cal. App. 8, 132 Pac. 1051, are typical, to the effect that a demand is necessary before such an action could be instituted and maintained, and that such demand must be made within a reasonable time and that the period of limitations of the jurisdiction is usually considered a reasonable time, are contrary to the rule in this state, announced in the *Brooks* case, *supra:* "It is unimportant when a demand was made for the return of the money. The right of action accrued at once upon the contract." Hence, conceding that the demand which was made was necessary before the action could be maintained, it could not toll the operation of the statute of limitations.

It follows that the judgment of the trial court should

be affirmed on the principal appeal as to the second cause of action involved, and reversed on the cross-appeal of respondent as to the first cause of action. Respondent will recover all costs of suit and appeal.

MITCHELL, STEINERT, and BLAKE, JJ., concur.

BEALS, C. J. (dissenting)—In my opinion, the six-year period of statutory limitation began to run in the instant case from the date the purchasers made the last payment on account of the stock. The case of *Brooks v. Trustee Co.*, 76 Wash. 589, 136 Pac. 1152, 50 L. R. A. (N. S.) 594, relied upon by the majority, is not in point on this phase of the case, as it appears that, in that case, the consideration for the purchase passed on or before the date of the letter which created the obligation to repay. The six-year period then unquestionably began to run from the date of the fully consummated agreement.

In the case at bar, appellant, Harris, made his final payment March 30, 1927. This action, having been commenced March 20, 1933, was in my opinion commenced in time in so far as the claim of appellant, Harris, is concerned, and should be affirmed upon respondent's cross-appeal. I concur in the affirmance of the judgment on the appeal of appellant, Harris.