ANDREW L. MAGEE v. MERCANTILE-COMMERCE BANK & TRUST COMPANY, Appellant.—124 S. W. (2d) 1121.

Division One, February 8, 1939.

*Thompson, Mitchell, Thompson & Young, C. P. Berry* and *Ronald J. Foulis* for appellant.

*James T. Blair, Jr.*, for respondent.

1024

HYDE, C.—This is an action on an oral agreement to repurchase bonds. Plaintiff claimed it was made by defendant as a part of the consideration for his purchase. The case was tried on an amended petition containing five counts. Premature appeals in this case were dismissed. [Magee v. Mercantile-Commerce Bank & Trust Co., 339 Mo. 559, 98 S. W. (2d) 614.] Thereafter, plaintiff dismissed all counts except count one, upon which he had a verdict for $15,722.94, and final judgment was entered thereon for plaintiff for that amount. Defendant has appealed.

We adopt plaintiff's statement of the transaction, without use of quotation marks. (Quotation marks show plaintiff's quotations from the record.) Plaintiff Magee had "done business" with defendant since 1900 and had accumulated in its bank a savings account of "about $14,000." Magee had "never speculated in bonds." On July

3, 1923, James Donahue, a teller in the savings department of the bank, "approached" Magee with the suggestion that he purchase bonds from the bank, and "advised" Magee "to buy some." Donahue "sent" Magee "over to the bond department." Donahue introduced Magee to one Riley, who "was a securities salesman" for the bank. He informed Riley that Magee "had a pretty sizeable amount" "in the savings account," and Magee wanted a higher rate of interest. Magee told Riley that "he had this money on deposit with our bank." The bank "did a regular bond business—bought and sold bonds." Mr. Maestre "was manager of the bond department" and Riley "worked under" him. Riley told Magee, "These bonds are just the same as cash. When you want your money back bring these bonds in and we will buy them from you." Magee said to Riley, "Well, that sounds all right, Mr. Riley, but, on second thought, you say you will buy these bonds back—but what will I get for them?" Riley said, "You come with me down to the bond department and I will have the manager of the bond department explain that to you."

Riley took Magee "down to the bond department," and while Magee "sat outside the rail," Riley went into Maestre's office. After a lapse of "about 5 minutes," Riley brought Maestre to Magee and "introduced him as the manager" saying, "He will explain anything you want to know." Magee said to Maestre, "Mr. Riley here says he will buy these bonds back. What will you pay me for these bonds— for example I am paying a premium on most of these bonds. Will you buy them back and pay the premium on them?" Maestre said to Magee, "No, I can't say as to that," and produced a book and attempted to explain "about fluctuations in the market." Magee testified, "It was Greek to me," and so he said to Maestre, "I am not interested in that book or anything else. What I am interested in is these bonds and my money invested in them. Will you buy these bonds back at par? . . . I told him I was not interested in the book, but I was interested in the money, as it represented my life's savings, and I had to be careful. I knew a little about bonds having a fluctuating value. I never had any experience prior to these. I understood what fluctuation meant when he said the value would fluctuate; what he was referring to was the premium." Maestre, answering Magee's question whether the bank would buy the bonds back at par said to him, "Yes we will. *Any time you bring these bonds in here and you want to sell them we will buy them back at par from you,* or any other bonds that you buy here." Riley was present, and "he gave me the nod when Mr. Maestre agreed to buy them back at par any time I chose to sell them." "Mr. Riley said they were just the same as cash and 'any time you want to sell them we will take them back.'" Riley "had not turned the bonds over to me

yet when I asked Mr. Maestre that question—whether he would buy them back. . . . The transaction was not closed. We were right in the middle of the transaction. I had not received the bonds yet.'' After the promise to repurchase was made, the bonds were immediately delivered to Magee by Riley and Maestre. The conversation occurred, the contract was entered, and the bonds were delivered on July 3, 1923. The amount paid the bank by Magee for the bonds was $14,824.28, and the par value was $14,000. (Among these were $8000 Texas levee bonds which defaulted when the District's levee washed away.)

On May 23, 1928, Magee secured a $14,000 90-day loan from the bank and as collateral gave the bank all of the bonds purchased on July 3, 1923, except $3000 in road bonds which had been cashed in by him when they fell due, and other bonds purchased from the bank at later dates, the total par value of all of which was $16,000. (Magee owned bonds of the total par value of $25,000, all of which he had purchased from defendant.) This loan was renewed for three months on August 21, 1928, and subsequently twice renewed for the same period on November 21, 1928, and February 19, 1929. During all of this time Magee had no information ''whether the market value of any of these bonds had started down.'' Prior to the day the loan became due, Magee went to the bank and talked with Mr. Powers, vice president of the bank, and ''asked him to renew the loan for me and he refused.'' Magee then offered Powers ''the whole $25,000 worth I had as collateral to renew that loan of $14,000, and he refused.'' Shortly afterward, on May 18, 1929, Magee went to his safe deposit box and secured the bonds which were there and took them upstairs to Powers, who, at the time, had on his desk the bonds Magee had put up as collateral. Magee ''placed (all of) them on Mr. Powers' desk,'' and ''said, 'I want you to buy these bonds back at par value as per your agreement,'' and Mr. Powers, said 'No, I will not.' Then I said, 'Well, the only way out of this is for the court to decide this case.' He said, 'All right, go to it. I won't take them.' '' On the same day, May 18, 1929, Magee went to the First National Bank with ''the $25,000 in bonds and put that up as security for a loan of $14,000.'' The loan was granted and the the loan previously made to Magee by Mercantile-Commerce Bank and Trust Company was repaid to it by him on that day. This action was instituted on June 13, 1933. Maestre denied that there was any agreement made to repurchase bonds at par. He said that the bank did repurchase bonds from customers at market or actual value at any time.

■ The above italicized statement, alleged to have been made by Maestre, is the basis of this suit. Defendant's answer contained a general denial; it further stated that, even if such an agreement was

made, plaintiff's suit was barred by the five-year Statute of Limitations (Sec. 862, R. S. 1929); and also that "it was the duty of plaintiff to make demand on said Trust Company to repurchase said bonds within a reasonable time, . . . that plaintiff failed to make any such demand within such reasonable time, and that . . . said offer . . . expired long before plaintiff made any demand." This agreement; that "we will buy them back at par from you . . . any time . . . you want to sell them," was the granting of a resale option to plaintiff. [See Lane v. Nunn, 211 Mo. App. 280, 243 S. W. 427; Suhre v. Busch, 343 Mo. 170, 120 S. W. (2d) 47; Brooks v. Trustee Co. (Wash.), 136 Pac. 1152, 50 L. R. A. (N. S.) 594 (there classified as an option to rescind).] The nature of such an option is (like an option to repurchase) a continuing offer; that is, it amounts to a continuing offer to buy at the price named within the time specified. [Suhre v. Busch, supra; Lively v. Tabor, 341 Mo. 352, 107 S. W. (2d) 62, 111 A. L. R. 976.] Such a continuing offer, if based upon sufficient consideration, is irrevocable and a binding option for whatever period is designated. [American Law Institute Restatement of Contracts, sec. 46.] Unquestionably, as plaintiff says, there was sufficient consideration (because the granting of the option was a condition of and part of plaintiff's agreement to purchase) to make this offer (or option) irrevocable. [Suhre v. Busch, supra; 60 A. L. R. 232 note.] The decisive question is: How long this offer to buy at par continued; or, within what time plaintiff was required to make his acceptance? (There is no question here raised that the manner of acceptance was by demand and tender or as to when such tender was made.) Defendant contends that, even if suit was not required within the five-year limitation period, an acceptance of such an oral option must be made by demand within that time.

Plaintiff says: "The contemporaneous parol contract to repurchase the bonds was a continuing one, categoric and unqualified, entitling plaintiff to demand performance at any time, and accordingly, the time within which he was entitled to demand performance was not limited to the period fixed by the Statute of Limitations or to what might be considered a reasonable time." Plaintiff further says: "Assuming that it was necessary for plaintiff to demand a performance of the contemporaneous parol contract to repurchase the bonds within a reasonable time . . . the contract was entered by the parties with a clear intent to postpone a demand for performance indefinitely, and, accordingly, there is no arbitrary rule of law which required that a demand should have been made within the period fixed by the Statute of Limitations or held that such period was the extent of what might be considered a reasonable time."

Options which fix no time have been held void either for indefiniteness or as perpetuities. [James on Option Contracts, secs. 218-222;

21 R. C. L. 303, sec. 28; 48 C. J. 960, sec. 40.] To avoid this result, the tendency has been (when no time is designated) to establish the rule of a reasonable time under the circumstances. "According to the weight of judicial authority, where no time limit is expressly fixed by the option contract for the exercise of the option, the law fixes a reasonable time, and what length of time is reasonable in a particular case, is a question of fact or of law, depending on the circumstances." [James, sec. 222; this is also the rule adopted by the American Law Institute, Contracts, sec. 46.] We think that this rule is sound and just, and that the intent of this contract was only to postpone demand for a reasonable time and not indefinitely. Plaintiff did not submit the case on this theory, as his instruction authorized a verdict upon the finding that demand and tender were made and refused, without regard to reasonableness of the time. However, since it appears from plaintiff's own evidence (and is the theory of his case) that the date of the contract sued on was July 3, 1923, and that date of demand and tender was May 18, 1929 (this suit was begun June 13, 1933), we think this is a case where there was no issue of reasonable time for the jury, even if it be considered a law case rather than equitable specific performance. We so hold because we have concluded that the limit of the period that could be held to be a reasonable time within which to make acceptance (by tender and demand) of an option of this kind orally granted, under the circumstances of this case, is the period of the Statute of Limitations applicable to oral contracts. Decisions in several different states support this ruling. [Marsh v. Brown Crummer Inv. Co. (Kan.), 23 Pac. (2d) 465, 88 A. L. R. 835, see note, 1. c. 846 (followed in McCormick v. McCormick (Kan.), 33 Pac. (2d) 942); McCollum v. Neimeyer (Ark.), 219 S. W. 746; Jenkins v. Marsh (Cal.), 132 Pac. 1051; Poole v. Corker (Ga.), 83 S. E. 1101; Norwood Trust Co. v. Twenty-Four Federal Street Corp. (Mass.), 3 N. E. (2d) 826; Beverly v. Richards (Mich.), 238 N. W. 270; Mitts v. Price (Miss.), 92 So. 163; Wilkins v. Cauffiel, 91 Pa. Super. Ct. 396; In re Dennett's Estate (Wis.), 220 N. W. 538; see, also, Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075, and cases cited; 17 R. C. L. 757, sec. 122, 37 C. J. 953-955, secs. 324-326, pp. 964-966, secs. 342-343; Lovrien v. Oestrich (Iowa), 242 N. W. 57.] Washington has gone further and adopted the rule of demand notes (see Wood on Limitations, secs. 119a and b, 124 and 125) in cases of such resale options. [Brooks v. Trustee Co. (Wash.), 136 Pac. 1152; Harris v. Puget Sound Bridge & Dredging Co. (Wash.), 38 Pac. (2d) 354.] The Brooks case holds that "it is unimportant when a demand was made" because "the right of action accrued at once upon the contract;" and that action is barred if suit is not brought within the limitation period. This ruling is followed in the Harris case. While there seems to be no

Missouri decision on this exact state of facts, our courts have uniformly applied the five-year statute to bar actions on oral agreements after that period in somewhat similar situations. [Landis v. Saxon, 105 Mo. 486, 16 S. W. 912; Carter v. Burns, 332 Mo. 1128, 61 S. W. (2d) 933; Lively v. Tabor, 341 Mo. 352, 107 S. W. (2d) 62; Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075; Beard v. Citizens' Bank (Mo. App.), 37 S. W. (2d) 678; Piggott v. Denton (Mo. App.), 46 S. W. (2d) 618; Bisesi v. Farm & Home Savings & Loan Assn. (Mo. App.), 78 S. W. (2d) 871.] Both the Boyd case and the Beard case hold that "if a demand were necessary to give rise to the cause of action, the demand should have been made within the statutory period."

Plaintiff relies on Jameson v. Jameson, 72 Mo. 640, and Cruse v. Eslinger (Mo. App.), 235 S. W. 496. In the Jameson case, there was a written agreement to pay $600 with six per cent interest from a certain date. This agreement recited: "The condition of the above obligation is such, that if the above named Elizabeth Jameson shall demand any or all of the above during her natural life, it shall be due and payable according to the tenor of the above; that in case of her death before any or all of the above shall be liquidated, it shall remain with me and my heirs forever as may portion of her estate." The court pointed out that "the payment is unequivocally conditioned upon demand made at any time during the life of the payee;" and that "if not so made, it was not to be paid at all, but to be forever retained by the payor." The court held "that it was the evident purpose and intention, both of the payor and payee, that there should be delay in making the demand, and the limit to the delay, as agreed upon by the parties, was the lifetime of the payee." Such a written agreement whereby one party was to become the absolute owner of money, for which the other got nothing, and which specifically gave the real owner the right to demand it at any time during her lifetime, is very different from this case where a purchase of securities was made at market value and no time was specifically designated for the exercise of an oral option to compel a repurchase at a fixed price. Cruse v. Eslinger must be considered as a case similar to that of an option for resale on termination of employment, which should, perhaps, be ruled on different grounds than a case between a vendor and purchaser not having any other relation between them. [See notes, 48 A. L. R. 625; 66 A. L. R. 1182; see, also, 37 C. J. 824-825, sec. 175, 17 R. C. L. 797-798, secs. 164-165.] Plaintiff also calls attention to the rule as to the bank deposits. There it is intended from the beginning of the transaction that the money will be paid back to the depositor or his representative in any event, and, as in the case of trusts or bailments, a different rule is applied. [17 R. C. L. 794, sec. 162, p. 800, secs. 167-168; 37 C. J. 841-843, secs. 196-197; see,

also, 47 A. L. R. 178, note; State ex rel. Commonwealth Trust Co. v. Reynolds, 278 Mo. 695, 213 S. W. 804; Missouri Pacific Railroad Co. v. Continental National Bank, 212 Mo. 505, 111 S. W. 574.] Those rules are not applicable to this case.

Plaintiff cites Grotte v. Rachman (Neb.), 207 N. W. 204. In that case, the court upheld an acceptance of an oral resale option by demand made three and a half years after plaintiff purchased the stock. Apparently this was within the limitation period applicable to oral contracts. [2 Wood on Limitations, 1629.] The question of the necessity of a demand within that period is not discussed and cases so holding are not noticed. The court did say that "the length of time elapsing between the time of sale and the demand of the purchase price and interest is immaterial, except as it may be considered with other evidence in determining the good faith and intention of the parties." This case does not follow the rule that such an option, which fails to fix a definite time, will be construed to mean within a reasonable time; and it also implies that such a right would be good in perpetuity. We cannot so hold. Plaintiff further cites cases, such as Vickrey v. Maier (Cal.), 129 Pac. 273, which hold that "peculiar circumstances affecting the question" may warrant the court in refusing to follow the general rule that "a time coincident with the Statute of Limitations will be deemed reasonable." Of course, there might be special circumstances which would require either lengthening or shortening the statutory period in determining the question of a reasonable time. [See Fuchs v. Meyer (Wis.), 227 N. W. 265; Andrews v. Andrews (Minn.), 212 N. W. 408, 51 A. L. R. 542.]

This is not a case where a corporation was selling its own stock so that every dollar received became a part of its capital funds, and so that the value depended upon the success of the vendor's own enterprise. [See Fuchs v. Meyer, supra.] There is no claim of fraud, misrepresentation or concealment which is the distinguishing feature of many such cases, and under such circumstances our limitation period is extended. [Sec. 862, R. S. 1929, subdiv. Fifth.] In this case, a bank was selling bonds of municipalities and governmental benefit districts, which it bought and sold at market prices. Plaintiff knew that there were market fluctuations in such securities. Likewise, plaintiff, by reasonable inquiry, could have kept informed as to such market prices. "Periods of limitations are graduated mainly with reference to the nature and quality of the evidence by which the contract sued upon must be established." [Lively v. Tabor, supra.] For that reason there is a shorter limitation period for oral agreements than for those in writing. Our five-year limitation period for oral contracts is longer than is allowed in many states. Plaintiff had it in his power (under the agreement to which he testified) to

accept his resale option by tendering his bonds and demanding his money on any day after he bought them. In this kind of a case, where it was contended there was no limit upon the time within which a purchaser could make demand, the Supreme Court of Arkansas said that "unless required to act within a reasonable time, he could, by nonaction, eliminate or postpone indefinitely the operation of the Statute of Limitations;" that "it is not the policy of the law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another;" and that "an interpretation ("that appellant should have all time, or forever") would exempt the obligation from the Statute of Limitations altogether." [McCollum v. Neimeyer, 142 Ark. 471, 219 S. W. 746; see, also, Boyd v. Buchanan, 176 Mo. App. 56, l. c. 60.] We think that the same reasons, which are the basis of fixing a five-year term of limitations for oral contracts, apply to the question of what is a reasonable time for acceptance of an oral option to make a resale at par of securities purchased under such circumstances as were shown in this case. We find no special, peculiar circumstances herein which would warrant a finding that a longer period than that of the five-year statute would be a reasonable time or was contemplated by the parties. We, therefore, hold that the trial court should have found that plaintiff's option had expired before his demand was made and should have directed a verdict for defendant. We further note that plaintiff's case apparently also failed for the reasons pointed out by Judge HIGBEE in Sedgwick v. National Bank, 295 Mo. 230, l. c. 262, 243 S. W. 893, and by Judge BLAND in Williams v. Ravanna Bank, 221 Mo. App. 887, 289 S. W. 34.

The judgment is reversed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.