Jeanette KILLOREN, Plaintiff-Respondent,

v.

O'Neill J. KILLOREN, Sr., Defendant-Appellant.

No. 31393.

St. Louis Court of Appeals,

Missouri.

Sept. 17, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1963.

Schwartz & Ely, Robert C. Ely, Richard C. Wuestling III, St. Louis, for appellant.

David G. Dempsey, Clayton, Robert E. Ballman, Oliver R. Farrell, St. Louis, for respondent.

L. F. COTTEY, Special Commissioner.

This action has been brought by a tenant against her landlord to recover damages for personal injuries sustained by her in a fall allegedly caused by the landlord's negligence in permitting a dangerous condition to exist in a portion of the leased premises over which he retained control. The answer was a denial of the charge and a plea of contributory negligence. At the conclusion of plaintiff's case defendant elected to stand on his motion for a directed verdict. Plaintiff's evidence, then, established these facts:

Defendant O'Neill J. Killoren, Sr., owned a duplex housing unit in St. Louis. He resided with his wife and son in one of the units; his father and his sixty-six year old mother, the plaintiff herein, occupied the other as his tenants. Beneath plaintiff's apartment there was a basement which defendant had reserved the right to use as a workshop for his son, and it is admitted by the pleadings that he was responsible for its maintenance although plaintiff was authorized to use it also, and in fact did use it for the storage of clothing and other household effects. On a night in June, 1961, defendant's son went to the basement to use the workbench there and, in the course of doing so, ignited some gasoline with which he was working and set fire to the workshop area. Plaintiff and her husband were in their apartment at the time. They smelled the fumes, saw the smoke, and heard the boy cry out that the basement was afire. Plaintiff went immediately to defendant's apartment to inform him of the fact, simultaneously dispatching her husband to a nearby fire alarm signal box. Defendant drag-

ged a garden hose into the basement in an attempt to extinguish the blaze and, in a few minutes, was joined there by the St. Louis Fire Department. Through their combined efforts the fire was brought under control. Meanwhile plaintiff returned to her apartment, raised the windows to clear out the smoke, and seated herself in the kitchen near the basement door. She was aware of the activities of her son and the firemen in the basement although she did not go down to watch them.

Promptly after the firemen's departure defendant set about to clean up the debris. The evidence as to what he did in that connection is derived from certain portions of his deposition which plaintiff read in evidence as a part of her own case. Insofar as that evidence is uncontradicted she is, of course, bound by it. Richeson v. Roebber, 349 Mo. 132, 159 S.W.2d 658, 659, 141 A.L. R. 1. It establishes that the debris consisted of burnt clothing and other rubbish that had been in or near the workbench area and fragments of burnt asphalt tile with which the basement floor was covered, all saturated with water. The workbench stood some thirty feet from the basement stairs. Between the two, approximately in the middle of the floor, there was a sewer drain, and at the foot of the stairs there was a light, the only light in the basement, or the only one in operable condition after the fire, so far as the record discloses. Defendant used a broom to push the debris over to the drain so that the water from it would be diverted into the sewer, and moved it thence on to the foot of the steps to be scooped up and carried out. That portion of the operation completed, he then shoveled the accumulation of debris into a two-handled galvanized wash tub and began carrying it up the basement stairs and out to the trash can at the rear of the duplex where he emptied it. He had made "four or five trips" out to the trash can in this manner, each occupying an interval of "three or four minutes," without delay or deviation from his purpose, when the business was interrupted by the accident out of which this lawsuit has arisen. He was returning for another load—the task "wasn't completed, I still had more to take out"—when he heard his mother screaming. He found her lying at the foot of the stairs. There was still "a considerable amount of smoke" in the basement at that time.

In only one detail does plaintiff's testimony conflict with defendant's account of the incident. She says quite frankly that from her position in the kitchen, near the outside basement entrance, she could hear her son cleaning the basement, heard "him shoveling down in the basement," knew "he was picking stuff up" and carrying it out, heard him make "three or four" trips "back and forth up the steps" in the course of doing so; but was unable to hear him emptying the rubbish because she was indoors and "it's quite a long walk before you get to the trash cans" at the rear of the building. Despite the fact that each tubful had to be carried up the basement stairs and "quite a long walk" back to the trash cans to be emptied, plaintiff was positive that the interval between each trip except the last one was only "thirty seconds." To that extent, if her estimate is not palpably incredible, defendant's version may be said to have been contradicted.

On the last occasion when defendant left the basement with a load of rubbish plaintiff testified he was gone "longer than the other occasions, I'd say about four or five minutes." She "supposed he was finished." "I just sort of waited and I didn't hear him come back and then I decided to go down and take a look," she said. "I wanted to go down and see what extent the damage was, I was curious." So, "I decided to go and I didn't say nothing to nobody." At the foot of the stairs she stepped off into the muck that remained and slipped and fell. She "was excited and anxious to get down" and couldn't recall whether she held the banister or not. There was smoke in the stairway and basement, she recalled, "but it wasn't too much that I couldn't see where I was going, but still it wasn't as if it was clear, either." The smoke "did bother me to

a certain extent but it didn't blind me, I could see where I was going; * * * I wasn't blinded completely." Asked "whether or not the lights were on down in the basement," she replied, "Well, the light right near the steps I went down, yes, sir, it was on." Nevertheless, she didn't see the debris until she had fallen in it. She then discovered that it consisted of "Little burned particles, all sooty and black, mixed with the water he had pushed"; that "it was like soapsuds"; that it covered an area "about two foot in diameter"; that "it wasn't too deep," perhaps "a quarter of an inch or less"; that it blended deceptively with the dark tile on the basement floor. She "didn't know it was there"; in fact, she explained, "I didn't look for anything to be at the steps that way, never was ordinarily."

Defendant's motion for a directed verdict having been overruled, the case was submitted upon that evidence. The jury's verdict was in plaintiff's favor and defendant has appealed.

Plaintiff's verdict-directing instruction opened with this preamble: "The Court instructs the jury that under the law of this State, a landlord owes his tenants the duty to exercise ordinary care to keep those parts of the leased premises controlled by the landlord in a reasonably safe condition for the use and occupancy of his tenants." It then hypothesized the fire, and defendant's clean-up operation in the course of which "he moved some of the wet, burnt debris over to the floor at the foot of the stairs leading down into the basement" where none had been before, and eventually submitted the issue of negligence in this language, italics supplied: "That O'Neill J. Killoren, Sr., then *left* the basement when some of the wet, burnt debris *was still upon the floor* at the foot of these stairs; and that by reason of the presence of the wet, burnt debris then on the floor at the foot of those stairs, such part of the basement was slippery, dangerous and not reasonably safe for walking upon, if you so find; and that O'Neill J. Killoren, Sr., then knew, or in the exercise of ordinary care should have known, that the floor at the foot of those stairs was slippery, dangerous and not safe for walking upon, if you so find; and that O'Neill J. Killoren, Sr., *then* failed to exercise ordinary care for the safety of his tenants *by allowing the aforesaid unsafe condition to exist,* if you find it was unsafe, *and that he was thereby negligent";* and that plaintiff was injured as the result thereof, then "your verdict should be in favor of the plaintiff."

We are familiar with the rule that "* * * a landlord has the duty to use ordinary care to keep those portions of the premises over which he retains control in a reasonably safe condition. * * *" Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 493. And we are familiar with its corollary, that "The landlord is not an insurer of the safety of persons using * * * (the portion of the premises) within his control, and he is required only to use reasonable care to keep such places in a safe condition. * * *" (Parenthesis ours.) 52 C.J.S. Landlord and Tenant § 417, p. 30. In this case the evidence was sufficient to warrant a finding by the jury that the muck on the basement floor constituted a "dangerous condition"; but the nub of the inquiry is whether, under the circumstances, defendant can be said to have allowed it negligently "to exist," within any rational concept of that term. It is unnecessary to cite authority for the proposition that, in determining this question, we must (a) view plaintiff's evidence in the light most favorable to her, within the limits of common sense and ordinary understanding, (b) allow her the benefit of all reasonable inferences to be drawn therefrom which are not in conflict with her theory of the case, and (c) refrain from interfering with the jury's verdict unless that verdict is so palpably unreasonable and unwarranted that reasonable minds can reach no other conclusion about it. Mindful of those principles, we have been at some pains to set out the evidence in detail, using, where conciseness would allow, the exact language of the witness. Viewed leniently, but without

emotional distortion, we cannot escape the conclusion that it wholly fails to sustain plaintiff's charge. Nowhere does it appear, nor may it be inferred, that defendant either delayed the commencement of his clean-up operation or dawdled in completing it. On the contrary, the evidence affirmatively establishes that he went about it with commendable diligence and dispatch. The rule admonishing us to take a favorable view of plaintiff's evidence stops short of suggesting that we close our eyes to reality. It was a physical impossibility for the rubbish to be removed in a single load and, by the same token, an inescapable necessity that some of it should be left behind during the interval required for the disposal of the remainder. Surely it cannot be said, on any rational basis, that a landlord has negligently allowed a condition "to exist" during the very time he was exerting every reasonable effort to remove it. Any contrary holding would impose on him a burden considerably more onerous than the duty to use ordinary care and would, in fact and effect, make him an insurer of his tenants' safety. That, the law does not sanction.

■ Plaintiff insists, however, that we must consider one other aspect of defendant's clean-up operation; specifically, his act of pushing the debris over to the foot of the basement steps for loading purposes. By collecting it there, rather than at some other unspecified point in the basement, plaintiff complains that defendant *created* a dangerous condition and then "walked away from it." She says he thereby invited the accident, whenas he could as easily have prevented it by pushing the debris "on further to a more remote area of the basement for eventual removal." That conclusion, we may observe in passing is not necessarily compelled. The assumption is at least equally valid that plaintiff's curiosity, having prompted her excited descent into the smoke filled basement, would thereafter have led her into its remotest recesses and ultimately to the self-same mischance. Nor do we detect any failure on defendant's part to exercise ordinary care in selecting the base of the stairway as the point for assembling the litter, where the light was, and where its loading would consequently be facilitated and its removal expedited. And where, incidentally, its presence could most easily be detected by anyone entering the basement in his absence, unlikely as that must have seemed at the time. More directly to the point, however, is the fact that *creation* of the dangerous condition, although alleged as a ground of negligence against defendant in the petition, was not submitted as an issue to the jury, and, therefore, must be regarded as abandoned. True, the act of pushing the debris over to the steps was hypothesized in an early part of the instruction, just as the fire itself was, but neither the fire nor the temporary disposition of the debris in the stairway area was characterized as having been negligently brought about, nor was there any intimation that either of those occurrences was considered as constituting negligence, nor was there any direction to the jury to find that either did constitute negligence. Both were treated as mere preliminary matters which led up to, and culminated in, the specific charge of negligence that was submitted, to-wit, "allowing the aforesaid unsafe condition *to exist*." (Emphasis ours.) At that point, for the first and only time, the instruction hypothesized defendant's failure to exercise ordinary care for plaintiff's safety; it pointedly submits that he "*then* failed" (emphasis ours) to do so, that is, after the occurrence of the recited preliminaries and, in point of fact, *after* he had "left the basement." His negligence is postulated solely on what occurred during his absence and because of his absence. That is the time when, and the reason why, he allowed the condition "to exist"; that, as plaintiff says in her brief, is when he "walked away from it." We rule, therefore, that the issue of defendant's alleged negligence in *creating* the dangerous condition has been abandoned.

It is unnecessary to discuss defendant's point that plaintiff was contributorily negligent as a matter of law.

For the foregoing reasons the judgment should be reversed.

The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of L. F. COTTEY, Special Commissioner, is adopted as the opinion of this court. The judgment is reversed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.