Joseph E. BECKER, Appellee,

v.

STATE OF MISSOURI, DEPARTMENT OF SOCIAL SERVICES, BOARD OF PROBATION AND PAROLE, Appellant.

No. 81–1660.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1981.

Decided Oct. 1, 1982.

Rehearing Granted Nov. 26, 1982.

Gordon Gamm, Kansas City, Mo., for appellee.

John Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen. (argued), Jefferson City, Mo., for appellant.

Before ROSS, STEPHENSON,* Circuit Judges, and HOWARD,** District Judge.

GEORGE HOWARD, Jr., District Judge.

The Department of Social Services, Board of Probation and Parole, of the State of Missouri, appellant-defendant (Social Services), appeals the district court's[1] denial of its motions for directed verdict, judgment notwithstanding the verdict (J.N.O.V.) and in the alternative, a motion for a new trial in this breach of contract action[2] in which the jury awarded Joseph E. Becker, appellee-plaintiff (Becker), $8,000.00. Social Services argues that the evidence was insufficient to sustain the verdict and the trial court erred in not giving an appropriate requested instruction because the trial court's instruction No. 7 does not articulate the essential elements of Becker's contract claim. We affirm the district court.

### I.

### THE FACTS

Since the jury verdict was in favor of Becker, the facts will be stated in the light of the evidence, and the reasonable inferences derived therefrom, most favorable to Becker. *Garoogian v. Medlock,* 592 F.2d 997 (8th Cir. 1979); *Zoll v. Eastern Allamakee Community School District,* 588 F.2d 246 (8th Cir. 1978).

Becker's employment with Social Services commenced on August 3, 1973, as a probation and parole officer.

On November 25, 1975, Becker wrote Social Services the following letter:

---

* The Honorable Roy L. Stephenson assumed senior status on April 1, 1982.

** George Howard, Jr., District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

2. Becker's complaint alleged both age discrimination in violation of the Age Discrimination and Employment Act of 1976, 29 U.S.C. § 621 *et seq.* and a breach of contract claim under the trial court's ancillary or pendent jurisdiction. The jury returned a verdict in favor of Social Services on the age discrimination claim and for Becker on the contract claim.

I have only recently been presented an opportunity to complete my Masters Degree by December, 1976. Ordinarily, I would have completed the program on a part-time basis in 1977. I am, therefore, asking for a leave of absence effective January 15, 1976. My Masters Degree will be in Social Work with emphasis on Corrections and I plan to do research on the needs of probation and parolees.

I have enjoyed my work as a Probation and Parole Officer and am thoroughly committed to the field. The supervision I have received from District 24 has been outstanding and without Mr. Cope's guidance and understanding it would have been impossible for me to accomplish all that I have since coming to this District. Due to the opportunity afforded me by Mr. Cope to develop community resources, I have filled all of my working and personal hours in programs which I feel are very important and if not continued will be lost to our agency.

I had hoped as Community Resource Developer to be able to continue these programs without taking away from my own personal life. However, since that position is no longer open to me, I have no other alternative but to request this leave of absence so that I may pursue these goals and finish my education.

On December 9th, the following reply was received by Becker:

Reference is made to your letter of November 23, 1975.

While the Board has a policy against educational leave in the technical sense, based on the fact that we would have to hold your position open while you were gone, we will be willing to go on record to allow you a choice of any position available at your rank with the agency at the time you desire to return. By doing this, we do promise you a job on your return if one is available and we do not have to hold your position open for you while you are gone. I am sure you understand the reluctance of the agency to hold a position open.

If this meets with your approval, please submit your resignation formally in consideration of this information.

Yours very truly,

Gail D. Hughes

Chief State Supervisor

On December 15th, Becker advised Social Services by letter:

As per your letter dated 12–9–75, I am resigning effective January 2, 1976, I understand that in lieu of educational leave you are going on record as allowing me a choice of any position available at my rank at the time that I desire to return. I am anticipating graduating from Kansas University in December of 1976 and will be applying for rehire at that time.

On December 31st, Social Services replied:

. . . . .

We have marked our records to show that, if you so desire, we will re-employ you in the Probation & Parole Officer I position we have available at the time you wish to return. Your salary at that time would be what it is now or the nearest step to it in the event the salary steps are changed again this year.

. . . . .

We have enjoyed having you with our agency and wish you the best of luck at Kansas University.

Becker received his master's degree in Social Work from Kansas University in January, 1977. In February, 1977, Becker was hired by the Veterans Administration Hospital in Chicago, Illinois. This employment lasted for three months. In May, 1977, Becker was employed by the Veterans Administration Hospital in Vancouver, Washington.

Becker testified that he took the Veterans Administration jobs in Chicago and Vancouver because these jobs would afford him an opportunity to acquire practical experience which would enable him to qualify for the specialist's degree in public service corrections; and that he accepted these openings because there were no comparable positions in the Kansas City area.

In October, 1977, Becker made application for reemployment with Social Services, but did not receive an immediate reply to his request.

On June 29, 1978, Becker sent the following mailgram to Social Services:

I hereby request reinstatement to the position of probation and parole officer. I request a location in Jackson, Clay, Platt or Cass County.

Social Services responded on July 13th:

After due deliberation it is the decision of this agency not to re-employ you as a Probation and Parole Officer.

On October 11, 1979, Becker filed his lawsuit in the district court.

## II.

Social Services argues that the evidence was "totally insufficient to justify the submission of plaintiff's contract claim to the jury and is insufficient to support the verdict returned by the jury." Social Services also contends that it never made a promise to Becker; that if there is a contract, it is clearly unilateral as opposed to bilateral; and that there is no consideration for either unilateral or bilateral contract. Accordingly, Social Services argues, the trial court erred in not granting Social Services' motion for a directed verdict, judgment notwithstanding the verdict and, in the alternative, motion for a new trial.

Before discussing the merits of Social Services' contentions, it is fitting that we discuss applicable rules of law relating to the issues confronting us.

It is settled that a trial court is authorized to grant a motion for a directed verdict under Rule 50(a) of Fed.R.Civ.P., where the evidence and the reasonable inferences flowing therefrom, viewed in the light most favorable to the plaintiff, and without weighing the credibility of witnesses, are insufficient as a matter of law to justify the verdict. In other words, the evidence supports one litigant's position so strongly that reasonable persons could not decide differently or reach different conclusions. Also, if the evidence is conflicting, the mo-

tion may not be granted. *Savage v. Christian Hospital Northwest*, 543 F.2d 44 (8th Cir. 1976); *Cox v. City of Freeman*, 321 F.2d 887 (8th Cir. 1963). The motion J.N. O.V., like the motion for a directed verdict, test the legal sufficiency of the evidence. Fed.R.Civ.P. 50(b). A motion for new trial, on the other hand, is directed to the sound discretion of the trial court. *Tsai v. Rosenthal*, 297 F.2d 614 (8th Cir. 1961); *Cooper v. Midwest Feed Products Co.*, 271 F.2d 177 (8th Cir. 1959).

 It is undisputed that the contractual relation asserted by Becker is predicated upon the four letters exchanged between the parties from November 25, 1975, to December 31, 1975. Under Missouri law, contracts in which performance depends upon the wish, will or pleasure of one of the parties is a unilateral contract. *Vondras v. Titanium Research and Development Company, A Corp.*, 511 S.W.2d 883 (Mo.App. 1974); *See also Coffman Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763 (Mo. App. KCD 1975); *Middleton v. Holecroft*, 270 S.W.2d 90 (Mo.App.1954). And a unilateral contract becomes complete when accepted by performance of the act called for in the offer. *Smith v. Vernon County*, 188 Mo. 501, 87 S.W. 949 (1905).

 Social Services recognizes, as it must, that the consideration essential to a simple contract may consist of a detriment to the promise or a benefit to the promisor. *Honeyfield v. Lambeth*, 519 S.W.2d 342 (Mo.App. Springfield D.1975); *Custom Head, Inc. v. Kraft*, 430 S.W.2d 593 (Mo. App.1968). The thrust of Social Services' argument is that the evidence fails to establish that Social Services entered into the correspondence with Becker in "an attempt to bargain for anything, either a benefit to itself or a detriment to the plaintiff. It was the plaintiff who initiated the entire exchange and wished to continue his education." Moreover, Social Services contends it never requested any performance on the part of Becker; and further, assuming the existence of some evidence of a contractual relationship, the evidence establishes "such a wide variance on such crucial terms in-

volved that it cannot be held binding and enforcible." For example, Social Services states, the correspondence refer only to Becker returning to Kansas University for the purpose of pursuing a master's degree, but the evidence reflects that Becker, after December, 1976, obtained employment in Chicago and Vancouver in order to qualify for accreditation as a social worker. And that Becker testified that "he felt that there was no [time] limit involving his return" to Social Services. In essence, Social Services claims there is no mutuality or a meeting of the minds which is fatal to Becker's contract action.

Becker testified that he was told by his supervisor that the degree he sought would aid him (Becker) in the performance of additional duties for Social Services; and that he (Becker) resigned his position because he was induced to do so by Social Services' offer to rehire him upon completion of his education. Social Services' letter of December 9, 1975, to Becker stated, in part, "submit your resignation formally in consideration of this information. While the Board has a policy against educational leave . . . we will be willing to go on record to allow you a choice of any position [if] you desire to return."

In response to Social Services' argument that the absence of a specific period of time for Becker to seek reemployment is fatal to Becker's contract claim, Becker testified that he understood the offer to provide that ". . . as long as I was pursuing my education I could come back."

Granting Becker the benefit of every reasonable and favorable inference which the evidence tends to support, the jury could, indeed, find that Social Services' letter of December 9th induced Becker to resign his position in order to pursue his educational objectives; that Social Services would benefit from Becker's achieving these educational aims; and that Social Services promised to rehire Becker to fill any position available at his rank at the time he desired to return.

The Court is not persuaded that the absence of a specific period of time for Becker to reapply for employment is fatal to his case. For it appears to be settled that where there is no fixed time imposed for the acceptance of an offer, the offer must be accepted within a reasonable time. What is reasonable depends essentially upon the circumstances in each case. *See Magee v. Mercantile-Commerce Bank & Trust Co.,* 343 Mo. 1022, 124 S.W.2d 1121 (1939).

Significantly, there is nothing in the record to indicate that Social Services' proposition to rehire Becker, under the conditions indicated, was not made in good faith. Unless the verdict is so "palpably unreasonable that reasonable minds can reach no other conclusions about it, the jury verdict may not be upset . . . ." *Killoren v. Killoren,* 370 S.W.2d 644 (Mo.App.1963).

Given the circumstances involved in this case, we are unwilling to hold, as a matter of law, that Becker failed to make a submissible case.

### III.

Social Services argues that the trial court erred in giving Instruction No. 7 because the instruction omitted several elements essential to the establishment of Becker's contract claim. Social Services also contends that its requested Instruction C, which was refused by the trial court, sets forth the essential elements.

Instruction No. 7 provides:

Your verdict must be for plaintiff, Joseph E. Becker, and against the defendant, Board of Probation and Parole, if you believe:

First, that defendant promised to rehire plaintiff at his same rank upon the completion of his master's education; and

Second, that in reliance on defendant's promise the plaintiff resigned his job; and

Third, that plaintiff made application to the defendant within a reasonable time after the completion of his education; and

Fourth, the defendant failed to rehire the plaintiff; and

Fifth, that as a direct result the plaintiff was damaged.

Requested Instruction C provides:

In order to prove his contract claim, the burden is upon the plaintiff to establish, by preponderance of the evidence in the case, the following facts:

*First:* The defendant proposed that is plaintiff would go back to school and secure his master's degree, defendant would rehire him upon the plaintiff's receipt of that degree; and

*Second:* The plaintiff within the time specified by the defendant went back to school and secured his master's degree without material addition, omission or defect; and

*Third:* Plaintiff did so with intent to accept defendant's proposal; and

*Fourth:* The defendant was notified within a reasonable time of plaintiff's performance; and

*Fifth:* Defendant did not perform its promise; and

*Sixth:* Plaintiff was damaged thereby.

The substance of Social Services' argument may be summarized: Instruction No. 7 does not require the jury to find "that the defendant (Social Services) proposed that if plaintiff would perform as requested, the defendant would carry out its promise; and that plaintiff performed as requested without [material addition, omission, or defect.]" In essence, Social Services argues here, as it did in regard to the sufficiency of the evidence issue, that without a request on the part of Social Services and a subsequent performance by Becker, there is no consideration; and that Instruction No. 7 re-

quired the jury to find "that plaintiff relied upon a promise by the defendant and, therefore, it appears that the court submitted the case on a theory of *promissory estoppel.*"

Instruction No. 7 is a modified version of Missouri's MAI 26.01. MAI 26.01 is tailored for unilateral contract cases.[3]

In passing on the submissibility of Becker's evidence, we ruled that it could not be said, as a matter of law, that Becker failed to make a submissible case; and that the jury could, from the evidence and all reasonable inferences flowing therefrom, find there was a binding contract. Adhering to that conclusion, we hold that Instruction No. 7 not only comports with the evidence, but is in conformity with Becker's theory of the case.

On the other hand, Social Services' Instruction C is an improper instruction since it does not conform to the evidence in the case. The evidence clearly reflects that Becker approached Social Services initially and advised Social Services that he wanted to return to school in order to acquire a master's degree. Social Services did not propose initially that Becker should go back to school. However, the fact that Becker made the initial contact is not fatal to his case. Becker contends, and the evidence so indicates, that Social Services offered to rehire him if he resigned to further his education since Social Services maintained a policy "against educational leave." Aside from getting Becker's resignation, Social Services would, upon Becker's completion of his education, get an employee who had made substantial improvements on his qualifications as a probation officer.

**3.** MAI 26.01 provides:

Your verdict must be for plaintiff, if you believe:

First, defendant proposed that if plaintiff would (set out plaintiff's performance) defendant would (set out defendant's promise), and

Second, plaintiff [after learning of defendant's proposal and] [within the time specified by defendant] (set out performance) [without material addition, omission or defect], and

Third, plaintiff did so with intent to accept defendant's proposal, and

Fourth, defendant was notified [within a reasonable time] of plaintiff's performance, and

Fifth, defendant did not [substantially] perform his promise, and

Sixth, plaintiff was damaged thereby.

[unless you believe plaintiff is not entitled to recover by reason of instruction number ____ (here insert number of affirmative defense instruction) ].

While Instruction No. 7 and requested Instruction C are modified instructions of MAI 26.01, and really are not materially different, when Instruction C's "First" paragraph is disregarded, Instruction No. 7 comes closer to conforming to MAI 26.01 than C.

Where, as here, the issue to be resolved is whether a contract was, in fact, made, an instruction correctly stating the law applicable to such issue and the submission of that issue to the jury are proper providing the instruction is not misleading. *See Vondras v. Titanium Research and Development Company, A Corp.,* 511 S.W.2d 883 (Mo.App.1974). And on appellate review the action of the trial court will not be disturbed unless there has been an abuse of discretion. *See Anderson v. Robertson,* 402 S.W.2d 589 (Mo.App.1966). After carefully reviewing the evidence and the instructions in question, we hold that the trial court did not err in giving Instruction No. 7 and rejecting Social Services' Requested Instruction C.

Relative to the argument that Instruction No. 7 submitted the case to the jury on the theory of promissory estoppel,[4] we deem it sufficient to state that it is clear Instruction 7 required a showing that Becker resigned his position in reliance on Social Services' offer to rehire him. Becker's theory of the case from the very beginning has been that his resignation was the *quid pro quo* for Social Services' promise to rehire him. Accordingly, Social Services' argument is rejected.

We, therefore, affirm the district court.

ROSS, Circuit Judge, concurring.

I concur in the court's opinion, but write separately to express my concern with the fact that the plaintiff Becker in this case received his master's degree in January 1977 and accepted positions in Chicago, Illinois and Vancouver, Washington before applying for reemployment with Social Services in Kansas City in October 1977. Because Becker originally advised Social Services that he was seeking a leave from his job to complete a master's degree which he expected to obtain by December 1976, the appellant's contention that this was the time for the performance of the contract has some appeal. Nevertheless, the correspondence from Social Services, which may be viewed as constituting the offer for a unilateral contract, indicates that Social Services would rehire Becker *at the time he desired to return.* Despite the fact that it would have been quite simple for Social Services to specify a particular time for acceptance of its offer to rehire Becker, such a reference is notably absent from any of its correspondence. Therefore, I am compelled to conclude that the offer for a unilateral contract in this case did not fix a specific time for performance.

As noted in this court's opinion, the rule in Missouri appears to be that "when no time is fixed by the offer for an acceptance, the offer expires upon the expiration of a reasonable time." *Coffman Industries, Inc. v. Gorman-Taber Co.,* 521 S.W.2d 763, 771 (Mo.Ct.App.1975). *See also Artcraft Cabinet, Inc. v. Watajo, Inc.,* 540 S.W.2d 918, 925 (Mo.Ct.App.1976). What is a reasonable time depends upon the circumstances in each case and may constitute a question of law or fact depending upon those circumstances. *See Magee v. Mercantile-Commerce Bank & Trust Co.,* 343 Mo. 1022, 124 S.W.2d 1121, 1124 (1939). *See also Coffman Industries, Inc. v. Gorman-Taber Co., supra,* 521 S.W.2d at 771.

4. Section 90 of the Restatement of Contracts, in discussing the doctrine of promissory estoppel, provides:

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Missouri Courts seem to follow the Restatement's concept of the doctrine. *See Debron Corp. v. National Homes Construction Corp.,* 493 F.2d 352 (8th Cir. 1974). It is plain that Becker's contract claim was not submitted to the jury on the theory of promissory estoppel. Furthermore, Becker did not assert promissory estoppel as a ground for recovery.

Although the circumstances in this case present a close question as to whether or not the nine months delay between the time Becker obtained his master's degree and the time he sought reemployment with Social Services is *per se* unreasonable, I believe that the district court could have properly concluded that a question of fact for the jury was presented as to the reasonableness of the time.[1] Remembering that under the strict standards governing appellate review of motions for directed verdicts and judgments notwithstanding the verdict the evidence must be viewed in the light most favorable to the plaintiff and such motion should only be granted if reasonable men could not differ as to the conclusions to be drawn from the evidence, *see, e.g., Farner v. Paccar,* 562 F.2d 518, 522 (8th Cir. 1977), I reluctantly conclude that the jury could have found that Becker's application was made within a reasonable time.

---

1. The jury was instructed by the trial court in Instruction No. 7 that it must consider whether Becker's application for reemployment was made within a reasonable time.