# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3240

_____

| | | |
|---|---|---|
| Sharon Y. Sanders, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Lee County School District No. 1; | * | |
| Lee County Arkansas Board of | * | |
| Education; Elizabeth Johnson, | * | |
| Individually & as President and | * | Appeal from the United States |
| Member of the Board of Education | * | District Court for the |
| of Lee County, Arkansas; Milton Hall, | * | Eastern District of Arkansas. |
| Individually & as Member of the Board | * | |
| of Education of Lee County, Arkansas; | * | |
| Victoria Perry, Individually & as | * | |
| Member of the Board of Education of | * | |
| Lee County, Arkansas; Pearlethe | * | |
| Collins, Individually & as Member of | * | |
| Board of Education of Lee County, | * | |
| Arkansas, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 16, 2011
Filed:  February 28, 2012

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.
_____

BYE, Circuit Judge.

An Arkansas jury found in favor of Sharon Sanders on her Title VII claims of race discrimination and constructive discharge against the Lee County School District No. 1 and individual members of the County's Board of Education. The jury awarded $10,000 in compensatory damages on the race discrimination claim, $60,825 in wages and fringe benefits on the constructive discharge claim, and a total of $8,000 in punitive damages against three individual defendants. Following trial, the district court granted the defendants' motion to set aside the constructive discharge and punitive damage verdicts, and awarded a fraction of the attorney fees requested by Sanders on her race discrimination claim. Sanders filed a timely appeal contending the district court erred in vacating the constructive discharge claim and the punitive damage award, and abused its discretion in reducing her request for attorney fees. We reverse and remand for further proceedings.

I

Sharon Sanders, a Caucasian woman, worked as the finance coordinator for the Lee County School District No. 1 (the School District) from August 2000 until November 20, 2007.[2] The School District employees were primarily African

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

[2]The primary issue before us is whether the district court erred in granting a motion for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure. Our summary of the evidence is therefore "viewed in the light most favorable to the plaintiff[.'" Becker v. State of Mo., Dep't of Soc. Servs., Bd. of Prob. & Parole, 689 F.2d 763, 766 (8th Cir. 1982).

American. In September 2007, Sanders was one of only two Caucasian employees working for the School District in administrative positions. The other Caucasian employee in an administrative position was Wayne Thompson, the school superintendent.

As the finance coordinator, Sanders's duties included presenting financial reports to the Board of Education (the Board) at its monthly meetings. There was tension between Sanders and Elizabeth Johnson, one of the African American members of the Board. Johnson did not like the format of the financial reports Sanders presented at the monthly school board meetings, among other things.

Prior to September 25, 2007, the Board consisted of four Caucasian members and three African American members. On September 25, 2007, the racial majority of the Board shifted when an African American candidate defeated one of the Board's Caucasian members in an election. Within two months of the election, the four African American members of the Board (Elizabeth Johnson, Milton Hall, Victoria Perry, and Pearlethe Collins, the four individual defendants in this case), over the objection of the three Caucasian members, summarily reassigned the only two Caucasian employees in the school district administration, school superintendent Thompson and finance coordinator Sanders, to diminished positions. The Board removed Thompson as superintendent and named Clyde Noel, an African American, as the interim superintendent. Thompson was reassigned to the position of Assistant Superintendent of Maintenance and Transportation. In addition, the Board removed Sanders as the finance coordinator and gave some of her financial duties to an African American employee, Doris Lewellen. Sanders was reassigned to the position of food services assistant. The Board made the two reassignments without referring to the employee manuals, and without consulting the school superintendent or legal counsel regarding the propriety of the reassignments.

Within five months of reassigning the only two Caucasian employees in the school district administration, the four members of the Board's African American majority moved to eliminate the position of food services assistant, the position to which Sanders had been reassigned. The motion failed only after Collins withdrew her second for the motion.

After losing her job as finance coordinator and being reassigned to a food services assistant position, Sanders took sick leave. While on sick leave, Sanders repeatedly asked the Board to provide her with a job description defining the duties of her new position, and a new contract. For several months, the Board did not provide Sanders with a new contract or a job description defining the duties of her new position. Sanders remained on sick leave from November 2007 through August 2008.

On August 12, 2008, the school superintendent sent a letter to Sanders indicating he was recommending to the Board that her employment with the school be terminated due to the number of days she had been on sick leave. Sanders responded to the letter by providing the superintendent with a doctor's statement releasing her to return to work as of September 2, 2008. Eight days after receiving the letter advising her of her pending termination, Sanders received another letter indicating a new contract for the food service assistant position was waiting for her upon her return to school. Sanders still was not provided a copy of the actual contract. Nor did Sanders receive a copy of a job description outlining her new duties.

On September 2, 2008, Sanders submitted a letter of resignation to the school superintendent. A little over a month later, she filed this lawsuit against the Board and the individual African American members of the Board alleging race discrimination, hostile work environment, and constructive discharge on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to

2000e-17. The hostile work environment claim was dismissed following a motion for summary judgment, but the race discrimination and constructive discharge claims proceeded to trial. The district court also allowed a claim of punitive damages to go to the jury.

At trial, Sanders presented the evidence summarized above. The defendants presented evidence to show Sanders was removed from her position as finance coordinator because she was insubordinate and failed to answer questions posed by the Board during its meetings. The jury rejected the Board's evidence and found Sanders had suffered an adverse employment action when she was demoted from finance coordinator to food services assistant, and the adverse employment action was based on race. The jury awarded $10,000 in compensatory damages for the emotional distress and anguish arising from the race discrimination claim. The jury also determined Sanders had been constructively discharged on the basis of race, and awarded her $60,825 for lost wages and benefits. Finally, the jury found Sanders was entitled to $5,000 in punitive damages against individual school board member Elizabeth Johnson, $2,500 in punitive damages against individual school board member Milton Hall, and $500 in punitive damages against individual school board member Victoria Perry. Sanders's proof on the claims for punitive damages focused on the evidence indicating the Board never consulted with the school superintendent or legal counsel before demoting the only Caucasian employees in the school district's administration, nor did the Board review the employee manuals before making the reassignments.

After the trial, the Board and its individual member defendants filed a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure to set aside all of the jury's verdicts. The district court granted the Rule 50 motion on the constructive discharge and punitive damage awards, but left intact the race discrimination claim and the jury's award of $10,000 in compensatory damages.

Sanders filed a motion for an award of attorney fees as the prevailing party pursuant to the provisions of Title VII (42 U.S.C. § 2000e-5(k)) and 42 U.S.C. § 1988(b). Sanders's attorney indicated he had worked 207 hours on the case and asked for an hourly rate of $200, plus reasonable expenses of approximately $4,000, for a total request of $46,735.82. The motion for fees also revealed Sanders had signed a one-third contingency fee agreement with her attorney.

The Board opposed the motion for fees, asking the district court to reduce the amount of fees requested due to Sanders's limited success, relying upon the district court's grant of summary judgment on the hostile work environment claim and post-trial vacation of the constructive discharge claim and punitive damage awards. The Board suggested the total amount of hours worked on the summary judgment be reduced by half because of the limited success of the summary judgment motion. The Board also sought an overall reduction in the $200 hourly rate, suggesting $175 fee was more appropriate for lawyers with fifteen or more years of experience, and suggesting plaintiff counsel's personal regular rate was $100 per hour. Ultimately, the Board suggested the district court use the lodestar method to award fees for 168 hours of work at $100 per hour to reflect a more reasonable rate and the limited success Sanders achieved.

Rather than analyze the fee request under the lodestar method, the district court referred to the contingent fee agreement Sanders had reached with her attorney. The district court considered the limited success Sanders achieved at trial, including the fact that the jury's awards for constructive discharge and punitive damages had been vacated, leaving only the $10,000 race discrimination award intact. The district court then noted the fee request made by Sanders was approximately five times greater than Sanders's recovery. The district court concluded a "fee award based on the contingency fee agreement between the plaintiff and her attorney would be more reasonable" and awarded fees in the amount of $3,333.33.

Sanders filed a timely appeal. On appeal, Sanders argues the district court erred in vacating the jury's award for constructive discharge, as well as the jury's award of punitive damages. Sanders also argues the district court's reduced award of fees was both an abuse of discretion and an error of law.

II

A

Sanders first contends the district court erred in granting the Rule 50 motion to set aside the jury's verdict on her constructive discharge claim. We review this claim de novo, keeping in mind we must view the evidence in the light most favorable to Sanders, the party who prevailed at trial, and we cannot reweigh the evidence or evaluate questions of credibility. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).

Sanders contends the evidence she presented at trial was sufficient to allow a reasonable jury to find she was constructively discharged. "To prove a constructive discharge [under Title VII], an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 418 (8th Cir. 2010). In addition, an employee must give her employer a reasonable opportunity to resolve a problem before quitting. Id. Evidence of the employer's intent can be proven "through direct evidence or through evidence that the employer could have reasonably foreseen that the employee would quit as a result of its actions." Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1083 (8th Cir. 2010) (internal quotations and citation omitted). The employer can render working conditions intolerable through inaction as well as action. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 617 (8th Cir. 2000). "The intolerability of working conditions is judged by an objective

standard, not the employee's subjective feelings[.]" Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2000).[3]

The fact the Board offered Sanders a new position after removing her from the administrative position of finance coordinator does not defeat her claim, because "[m]erely offering a different job to an employee does not necessarily shield an employer from liability for constructive discharge[.]" Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir. 1997). "If an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." Id.

The Board does not challenge the jury's determination that it reassigned Sanders from the administrative position of finance coordinator to food services assistant on the basis of race. Instead, the Board argues the job reassignment is not enough to prove intolerable working conditions where Sanders remained on sick leave during the entire disputed time period and thus was never exposed to the work environment. Under the circumstances involved in this case, we believe Sanders presented sufficient evidence for a reasonable jury to conclude she was constructively discharged.

_____

[3]Our circuit has never delineated specific factors a jury or court may consider in determining whether a constructive discharge has occurred. Two other circuits have identified seven factors to consider singly or in combination. See Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994) ("Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not."); see also Logan v. Denny's, Inc., 259 F.3d 558, 569 (6th Cir. 2001) (adopting the Fifth Circuit's factors).

-8-

We have previously recognized a plaintiff may support a constructive discharge claim with evidence that she was reassigned to a new position which "a reasonable employee in [her] position would find demeaning and intolerable." Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 732 (8th Cir. 1996). Here, a reasonable jury could conclude the change in position from finance coordinator to food services assistant was a demotion with a diminution in title and significantly decreased responsibilities, and that a reasonable employee in Sanders's position would find the reassignment demeaning. Furthermore, "[c]onstructive discharge through placement in a job that is 'intolerable' may be shown by a deliberate placement in a job for which one is not qualified and that one is unable to perform, regardless of whether the environment is intolerably abusive or oppressive." Green v. Harvard Vanguard Med. Assocs., Inc., 944 N.E.2d 184, 195 n.10 (Mass. App. Ct. 2011); see also Allison v. Treadco, Inc., 1 F. App'x 598, 599 (8th Cir. 2001) (considering whether a new position required the plaintiff "to perform duties he was incapable of performing" in determining whether a constructive discharge occurred).

Here, the Board's inaction in failing to respond to Sanders's repeated requests for a job description while she was on sick leave, so she could determine whether she was capable of performing the duties of the new position, supports the claim of constructive discharge. Sanders's repeated requests for a job description also satisfy the requirement that an employee give an employer a reasonable chance to resolve a problem before quitting. We find it particularly telling that the Board never provided Sanders a copy of a job description outlining the duties of her new position, even after representing to her that a new contract was waiting for her upon her return. Finally, the evidence showing the Board summarily reassigned the only two Caucasian employees in administrative positions shortly after the racial composition of the Board changed, and then subsequently voted to eliminate the position to which Sanders had been reassigned, suffices as evidence of the Board's intent to force Sanders to quit.

-9-

We acknowledge this is a close case, and the defendants surely presented sufficient evidence to allow a reasonable jury to reject the constructive discharge claim. But our task in reviewing the grant of a Rule 50 motion is only to determine whether "there is a complete absence of probative facts to support the verdict." Wilson v. Brinker Int'l, Inc., 382 F.3d 765, 769 (8th Cir. 2004) (internal quotations and citation omitted). In addition, we must give "great deference to the jury's verdict." Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000). In this case, we cannot say there is a complete absence of probative facts to support the jury's verdict. We must therefore reverse the district court's decision to grant the Rule 50 motion on the constructive discharge claim.

B

Sanders next contends the district court erred in granting the Rule 50 motion to set aside the punitive damage awards. We review this claim de novo as well, viewing the evidence in the light most favorable to the verdict. Diesel Mach., 418 F.3d at 832.

Sanders was entitled to recover punitive damages if there was evidence the Board members committed illegal discrimination with malice or with reckless indifference to her federally protected rights. 42 U.S.C. § 1981a(b)(1). To show reckless or callous indifference, it is not enough that a plaintiff show the employer knew it was discriminating, but rather the plaintiff must go farther and show the employer had "knowledge it may be acting in violation of federal law[.]" Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999).

Because it is common knowledge that race discrimination violates federal law, the Third Circuit has held evidence of blatant race discrimination is sufficient to prove knowledge such discrimination violates federal law unless the defendant actor affirmatively proves ignorance. See Alexander v. Riga, 208 F.3d 419, 432 (3d Cir.

2000); see also Lafate v. Chase Manhattan Bank (USA), 123 F. Supp. 2d 773, 784 (D. Del. 2000) ("The Third Circuit has also recognized that, since most employers know that discrimination on the basis of race or gender is prohibited by federal law, courts should presume such knowledge unless the employer affirmatively proves ignorance.") (citing Alexander, 208 F.3d at 432).

In this case, we believe the evidence supports the adoption of the Third Circuit's approach requiring the defendants to affirmatively prove ignorance before a vacation of the punitive damage award is justified. There was strong evidence the individual school board members discriminated against Sanders on the basis of race. The jury rejected the Board's evidence that they reassigned Sanders because of insubordination, leaving no other motivation for the demotion except for the color of Sanders's skin. That evidence, coupled with the Board members' failure to consult with the superintendent, legal counsel, or the school district's employee manuals before taking adverse action against Sanders, seems to be sufficient evidence the school board members acted with callous indifference to whether their actions violated federal law.

In this case, however, the jury was not instructed to consider whether the individual Board members affirmatively proved ignorance of federal law when discriminating against Sanders on the basis of her race. We therefore reverse the district court's Rule 50 motion vacating the punitive damage award, but remand this issue to the district court to allow Sanders to prove her claim for punitive damages, subject to the Board's right to assert the affirmative defense of ignorance of federal law.

C

Finally, Sanders contends the district court abused its discretion in reducing her request for attorney fees by considering her contingent fee agreement instead of

-11-

analyzing the fee request under the lodestar method.  See Quigley v. Winter, 598 F.3d 938, 957 (8th Cir. 2010) (concluding a district court's failure to analyze a civil rights fee award using the lodestar approach is an abuse of discretion); see also Ross v. Douglas Cnty., Neb., 244 F.3d 620, 622 (8th Cir. 2001) (concluding a prevailing plaintiff in a Title VII case is entitled to attorneys under a contingent fee agreement or under the lodestar method of calculation, whichever is greater).  Our resolution of the constructive discharge claim and the punitive damage awards directly affects the degree of success Sanders obtained in her civil rights action, requiring a remand on the fee request in any event.  We therefore deem it unnecessary to address Sanders's arguments with respect to whether the district court abused its discretion by placing more weight on the contingent fee agreement than the lodestar method.

III

We reverse and remand for further proceedings consistent with this opinion.

_____